Fey and others, Respondents, vs. The I. O. O. F. Mutual Life Insurance Society of Pennsylvania, Appellant.

*December 15, 1903—February 2, 1904.*

*Life insurance: Benefit societies: Contract limitations of actions: Waiver: Evidence: Estoppel: Agent: Service of summons: Proofs of death: Harmless error: Special verdict: Framing questions: Infancy of plaintiff: Failure to appoint guardian ad litem.*

1. Where a benefit certificate, void in case of suicide, contained a provision that no action should be brought or maintained thereon unless commenced within one year from the death of insured, and action was commenced more than one year thereafter, a nonsuit should be entered, or a verdict directed, unless there are facts in evidence tending to show that the contract provision was waived or otherwise obviated.

2. In such case, it appeared, among other things, that insured died August 8, 1900, and proofs of death were duly furnished September 5, no objection thereto being made. November 28, 1900, the beneficiaries' attorney wrote asking when payment might be expected. Receiving no reply, he wrote again February 16, 1901, and was informed on February 19 that the matter was in the hands of claim committee, that he would be notified, and, on April 16, following, the company's secretary wrote the attorney that the claim was in the hands of the company's general counsel, investigation having developed the fact that death was the result of *suicide*, and "so soon as I have heard from him will communicate with you," followed by no further communication from the company. The action was commenced February 10, 1902. *Held*, that even if the letter of February 19, could be construed as a request, express or implied, to delay action, the letter of April 16 must be construed as putting an end to negotiation, and withdrawing any implied request for delay.

3. In such case, a letter dated November 28, 1900, from defendant to one who testified he was its local agent, considered, and *held* that even though the contents could be construed as a request for delay, yet the letter of April 16, to the attorney terminated the request, and hence the full contract year had expired before action was brought.

4. In an action on a benefit certificate, issued by a foreign corporation, providing that action must be begun within one year after the death of the insured, it appeared, among other things, that the death occurred August 8, 1900, and that action was commenced February 10, 1902; that G., a witness called by plaintiffs, testified he was defendant's agent up to February 16, 1902; that he collected and remitted dues and assessments as such agent; that he informed defendant of insured's death, signing himself "local agent," and that in response blanks were sent him and he made out the proofs of death. This evidence was introduced by plaintiffs to prove agency, and to justify subsequent introduction of G.'s declarations, as binding on defendant, which were received in evidence. *Held:*

(1) That after successfully assuming G.'s agency and reaping the advantage of it for one purpose, plaintiffs could not abandon it for another purpose.

(2) That G. was an agent for the service of process within the calls of subd. 9, sec. 2637, Stats. 1898.

(3) That evidence produced by defendant, in effect, that G. was not defendant's agent, and that it never had any agents in Wisconsin, did not excuse plaintiffs' failure to bring the action within the year limited by the certificate.

5. Sec. 4234, Stats. 1898, extending for one year the limitation on commencement of an action, where the person entitled to bring the action dies before the term limited expires, applies to legal limitations, and does not affect limitations on bringing action provided by contract.

6. In an action on a benefit certificate, void in case of suicide, the fact that death was caused by drinking carbolic acid was proven beyond dispute, the real issue being whether the taking was accidental. Defendant offered in evidence the verdict of the coroner's jury that deceased came to his death by "taking carbolic acid." *Held*, even though the verdict was admissible, which may be doubted, that its rejection was not prejudicial error.

7. In such case, while the exclusion of the proofs of death, containing the statement that deceased "swallowed carbolic acid" is error, it did not prejudice defendant because that fact was not in dispute.

8. In an action on a benefit certificate where one material issue was whether the death of the insured was caused by suicide, sane or insane, a question of the special verdict "Did (deceased) come to his death as the result of an act voluntarily committed, with intent to produce death by his own hands?"

considered, and *held*, not well framed, though not materially defective.

9. Where a plaintiff is a minor, objection that no guardian *ad litem* was ever appointed is too late when raised for the first time in the supreme court. Such objection raises the question of plaintiff's legal capacity to sue, and must be taken by demurrer or answer, or it is waived.

APPEAL from a judgment of the circuit court for Sauk county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This is an action upon a life insurance policy or benefit certificate originally issued by the Piqua Mutual Aid & Accident Association, a foreign corporation, insuring the life of Fred C. Runge in the sum of $1,000, in favor of his wife. The evidence on the trial showed that the certificate was issued August 12, 1897, and that at that time Fred C. Runge, the insured, was a laboring man residing at or near the village of Ablemans, Sauk county, and having a wife, Henrietta Runge, and four minor children, Emma, *Frank, Willie,* and *Fred;* that in October, 1899, Henrietta having died, the four children were duly made beneficiaries of the policy by request of the insured; that July 1, 1899, the Piqua Company consolidated with the Potomac Life Insurance Company, a West Virginia corporation, which assumed all the contracts of the former company, including the certificate owned by Runge; that Runge died August 8, 1900, from the effects of taking carbolic acid, his assessments being all paid; that due proofs of death were served on the Potomac Company September 5, 1900, by Emma Runge, who was then married, and named Emma Brickman; that December 1, 1901, the Potomac Insurance Company consolidated with the defendant in this action, which is a Pennsylvania corporation, and which assumed all contracts and liabilities of the Potomac Company; that January 31, 1902, Emma Runge sold and assigned all her rights in the policy to the plaintiff, *Adolph Fey;* that Willie Runge died July 6, 1901, and that the plaintiff *Fey* was duly appointed administrator of his

estate; that the plaintiff *Frank Runge* was of age when this
action was brought, or attained his majority soon afterwards,
but the plaintiff *Fred Runge* was still a minor; that this ac-
tion was commenced by the service of summons February 10,
1902; that the amount realized by assessments, and which
was properly applicable on this policy, if anything was due
thereon, was the sum of $930.

The court submitted to the jury a single question, as fol-
lows:

"Did Fred Charles Runge come to his death as the result
of an act which he voluntarily committed, with intent to pro-
duce death by his own hand?"

This question was answered in the negative by the jury,
and judgment for the plaintiffs for the amount due upon the
policy, with interest from November 5, 1900, was rendered,
and the defendant appeals.

For the appellant there were briefs by *Bentley & Kelley,*
and oral argument by *F. R. Bentley.*

For the respondents there was a brief by *Grotophorst,
Evans & Thomas,* and oral argument by *E. A. Evans.*

WINSLOW, J.   The insurance policy or benefit certificate
in the present case contained a provision that no action
should be brought or maintained thereon unless it were com-
menced within one year from the date of the death of the
insured.   It was admitted by the plaintiffs in making their
case that the insured died August 8, 1900, and that this ac-
tion was commenced February 10, 1902; hence the plaintiffs
should have been nonsuited, or a verdict for the defendant
directed, unless there were some facts in evidence tending
to show that the requirement of this provision had been
waived or otherwise obviated.   It is claimed by the plaintiffs
that this requirement was not operative here, *first,* because
the evidence shows that the insurance company has waived
its right to insist thereon; *second,* because the evidence shows

that the insurance company had no agent in this state upon whom service could be made; and, *third,* as to the interest of Willie Runge, at least, that by the provisions of sec. 4234, Stats. 1898, the time for bringing the action was extended by reason of his death, which took place July 6, 1901. These contentions will be taken up in their order:

1. This court has held, in accordance with authorities elsewhere, that if an insurance company, by its acts, induces the beneficiary to delay bringing suit on the policy, the time of such delay is not to be reckoned as a part of the time limited for the bringing of the action. *Killips v. Putman F. Ins. Co.* 28 Wis. 472; *Black v. Winneshiek Ins. Co.* 31 Wis. 74. In the first case above cited there was evidence showing that the general agent of the company wrote to the insured, stating that the proofs already furnished were defective, and promising to call and see the insured with reference to the matter during the following month, and that the insured delayed furnishing additional proofs or commencing suit, relying on this promise, which was never fulfilled; and it was held that this was sufficient to go to the jury as proof of waiver. In the *Black Case* it was held that an agreement made between the insured and the insurance company, soon after a fire loss, providing that the insured would accept a certain sum in full payment, and that the company would pay that sum on or before a certain date, three months in the future, unless it should previously notify the insured that it would contest the loss, waived the limitation for the time during which the agreement ran, no such notice having been given. It is manifest that the proof in the present case does not bring it within either of the above cases. The evidence here shows that the proofs of death were duly furnished September 5, 1900, and no objection was ever made to them. November 28, 1900, Mr. Grotophorst wrote to the Potomac Company, stating that he was retained by the heirs of Runge, and asked when payment of the policy might be expected. Re-

ceiving no reply to this letter, he wrote again February 16, 1901, stating that he had heard nothing from the company, and asking the company to report at once what they intended to do; that, in case of refusal to pay, he would take steps to collect the amount due on the policy. To this letter the company replied February 19, 1901, by letter stating that "the matter is now before our claims committee and owing to the absence of our adjuster, we cannot, at the present moment give the full facts in regard to the same but you will be duly notified upon return of said adjuster to this office." On April 16th following, the company's secretary sent to Grotophorst a letter stating that "the claim is in the hands of the company's general counsel, investigation having developed the fact that death was the result of *suicide*. So soon as I have heard from him will communicate with you." This was the last letter sent to Grotophorst. It appears further that the claim at about this time was in the hands of Mr. E. A. Jones, an attorney at Washington, D. C., where the home office of the Potomac company then was, and that on April 20, 1901, the secretary of the company wrote to him, stating that "all the papers in the Runge case have been sent to Gov. Hart, the company's general counsel, to whom you are referred." No further negotiations or letters between the company and either Grotophorst or Jones are shown. There is very little in this correspondence which could reasonably be construed as a request, either express or implied, to delay action; but, conceding that the letter of February 19th might be so construed, and that it was acted upon, still the letter of April 16th, stating that the cause of death was suicide, and that the papers had been placed in the hands of the company's counsel, must certainly be construed, especially when received by an attorney at law, as quite definitely putting an end to negotiation, and withdrawing any implied request for delay. In this view of the matter, there was only two months' delay on account of acts of the company; and,

as the action was delayed six months beyond the termination of the year, it is plain that, even if the two months be deducted, the action was still brought four months after the expiration of the year. There was another line of evidence, however, that was somewhat relied upon to prove waiver. One Geisser was called as a witness, who testified that he was local agent at the village of Ablemans both of the Piqua Company and its successor, the Potomac Company, and he produced some correspondence with the Potomac Company in reference to the claim. It appears that Geisser assisted in preparing and forwarding the proofs of death in September, 1900, and afterwards wrote several letters to the company concerning the claim, in which he signed his name as "local agent." November 28, 1900, he received the first reply to his inquiries from the company; stating, in effect, that there was litigation pending against the old Piqua Association, but that they believed that all claims would soon be adjusted to the satisfaction of all, and that all claims would be listed according to date of approval, and paid in their turn. March 18, 1901, he received another letter from the company, stating that the Runge claim would be taken up "the last of this month or the first of next for settlement." Geisser also testified that he received a letter from the company in reply to one written by himself about eight months after Runge's death, in which they said they would settle the case soon, but this alleged letter could not be found. Mr. Grotophorst testified, against objection and exception, that he had a conversation with Geisser about the last of February or the first of March, 1901, in which Geisser told him that the matter would be settled shortly, within two weeks or two months, and that Geisser then showed him some letters from the company in which they stated that the matter would be adjusted. There is no testimony that Geisser acted in any degree as agent of the beneficiaries in this correspondence, or that they even knew of his action; but even conceding that the letter of No-

vember 28, 1900, could be construed as a request for delay, still the letter of April 16th to Grotophorst would terminate the request, and the delay occasioned, at the most, was less than five months, so that the full year had expired before the bringing of the action.

2. It is claimed that the plaintiffs were excused from bringing the action within the year because the evidence shows that the Potomac Company had no agent in the state upon whom service could be made. This contention is based upon the testimony of one Bristow, the secretary of the Potomac Company, to the effect that Geisser was never agent of that company, and that it had no agents in Wisconsin. The argument is that the one-year limitation clause cannot apply if by its own act of omission the company makes it impossible for the policy holder to commence an action upon the policy in the local courts, because, in such case, the company has prevented the commencement of the action by its own act, and, if the limitation were to be held effective, the company would be taking advantage of its own wrong. There is much reason in the argument, and it has been directly approved by the supreme court of Michigan. *Peoria M. & F. Ins. Co. v. Hall*, 12 Mich. 202. It is not necessary to pass upon the question here. The plaintiffs are in no position to make the contention that the Potomac Company had no agent in Wisconsin. They put upon the stand as a witness Mr. Geisser, before mentioned in this opinion, and proved directly by him that he was the local agent of the Piqua Company, the Potomac Company, and the defendant company during the whole time that they did business at Ablemans, and up to February 16, 1902; that he received and remitted dues and assessments as such agent; that he wrote numerous letters to the Potomac Company, signing them as "local agent"—among them being a letter notifying the company of Runge's death, and requesting that claim blanks be forwarded; that such blanks were at once forwarded to him;

and that he made out the proofs of death. Not only is it apparent that this testimony was introduced for the purpose of proving the fact of Geisser's agency, in order to justify the subsequent introduction of Geisser's statements to Grotophorst, as binding on the company, but plaintiffs' attorneys definitely stated to the court that such was the object of the testimony; and the statements made by Geisser to Grotophorst were in fact afterwards received in evidence for that reason. After successfully assuming this position and reaping the advantage of it for one purpose, the plaintiffs cannot abandon it for another purpose. If Geisser was enough of an agent to make his declarations admissible against the company, he was enough of an agent for the purpose of service of process, especially when subd. 9, sec. 2637, Stats. 1898, is considered, by the broad and sweeping terms of which it is provided that service upon a foreign insurance company may be made upon any one who aids or assists the company in transacting any business.

3. Nor do we think that the provisions of sec. 4234, Stats. 1898, have any bearing on the question even as to the share of Willie Runge who died July 6, 1901, and within the year. That section provides:

"If any person entitled to bring an action die before the expiration of the time *limited* for the commencement thereof and the cause of action survive, an action may be commenced by his representatives after the expiration of that time and within one year from his death."

It forms a part of the chapter on legal limitations of actions. After providing in numerous sections the specific limitations upon various forms of action, the chapter proceeds to specify certain exceptions to the running of the limitations. Sec. 4231 provides, in substance, that if the defendant be out of the state when the action accrues, or depart from and reside out of the state after it accrues, the time of his absence shall not be deemed a part of the time limited.

Sec. 4232 provides that, when a person is an alien enemy, the time of the continuance of the war shall not be a part of the time limited. Sec. 4233 provides, in substance, that if any plaintiff (except in certain cases) at the time the action accrues be a minor, or insane, or imprisoned on a criminal charge, or in execution under a sentence for a term less than life, the time of such disability is not to be a part of the time limited for the commencement of the action, with certain provisos, not necessary to be stated; and then follows sec. 4234, the terms of which have been previously stated. It seems to us very clear that these sections were designed simply to make the chapter on legal limitations a harmonious whole, and that, when they refer to "the time limited for the commencement of the action," they refer to the time limited by law, as laid down in the previous sections of the chapter. Legal limitations, and not contract rights, is the subject under consideration. Had there been an intention to affect the terms of contracts, it would have been very easy of statement, and it seems certain that it would have been indicated in some unequivocal manner. It has been directly held that the statutory exception in favor of minors does not affect the contract limitation. *Suggs v. Travelers' Ins. Co.* 71 Tex. 579, 9 S. W. 676; 4 Joyce, Insurance, § 3196; *O'Laughlin v. Union Cent. L. Ins. Co.* 11 Fed. 280. See, also, *Riddlesbarger v. Hartford Ins. Co.* 7 Wall. 386.

Our conclusion is that a nonsuit should have been granted, or, in default of a nonsuit, that a verdict for the defendant should have been directed at the close of the evidence.

There are some minor questions presented, which perhaps deserve attention, especially in case of another trial. An inquest was held upon the body of Runge, and a verdict rendered that he came to his death by "taking carbolic acid." The defendant offered the verdict in evidence, and it was rejected, and this ruling is claimed to be error. Conceding that the record was admissible, which may be a matter of

some doubt (*Olwell v. Milwaukee St. R. Co.* 92 Wis. 334, 66 N. W. 362), there was no prejudicial error in the ruling, because the fact that the death was caused by drinking carbolic acid was proven beyond dispute, and was, in substance, admitted, and the only real question was whether the taking was accidental.

Again, the defendant offered in evidence a part of the proof of death made by Emma Brickman, in which she stated that the deceased "swallowed carbolic acid," and the evidence was excluded. This was plainly error, because, though the proof was not made by any of the plaintiffs, still it was made on behalf of all the beneficiaries, and the rights of all were dependent upon the fact that these proofs had been made; hence any statements required to be made therein were admissible against all, the fact being that the other beneficiaries had made no separate and independent proofs, and relied solely on Emma's proofs; but here, again, there was no prejudice, as the fact was not in dispute.

The form of the question submitted to the jury is criticised, and while, perhaps, there is no ground for holding it materially defective, it must be said that it was not well framed. The sole material question was whether the death of the insured was caused by suicide, sane or insane; and the question should have been framed, if not in these words, at least in such words as to clearly put this exact issue before the jury.

The plaintiff *Fred Runge* is a minor, and it does not appear that any guardian *ad litem* was ever appointed for him. Objection is made in this court for the first time that he cannot maintain the action, on account of his being an infant when the same was commenced. The objection is too late. It is an objection that the plaintiff has not legal capacity to sue, and this objection must be taken by demurrer or answer, or it is waived. Sec. 2654, Stats. 1898.

Another very vital question is presented by the briefs and

arguments. The policy provided that "if the death of the insured is caused by suicide, whether the insured be sane or insane," it should be avoided; and the appellant contends that the evidence shows with such clearness as to exclude every other reasonable hypothesis that Runge committed suicide, so that a verdict for the defendant should have been directed on this ground. There are but four justices participating in the decision of this appeal, and there is an equal division of opinion upon the question; hence there can be no reversal on this ground, and no useful purpose subserved by a recital or discussion of the evidence.

*By the Court.*—Judgment reversed, and action remanded for a new trial.

SIEBECKER, J., took no part.