JOINT SCHOOL DISTRICT NO. 1, CITY OF WISCONSIN RAPIDS, etc., and others, Respondents, v. WISCONSIN RAPIDS EDUCATION ASSOCIATION and others, Appellants.*

*No. 116 (1974). Argued October 2, 1975.—Decided October 28, 1975.*
(Also reported in 234 N. W. 2d 289.)

---

* Motion for rehearing denied, without costs, on January 13, 1976.

For the appellants there were briefs by *Bruce F. Ehlke, Robert J. Arnot II,* and *Lawton & Cates,* all of Madison, and oral argument by *Mr. Ehlke.*

For the respondents there was a brief by *Chambers, Nash, Pierce & Podvin,* and oral argument by *Francis Podvin,* all of Wisconsin Rapids.

BEILFUSS, J. The issues raised by the defendants are as follows:

1. Did the circuit court have jurisdiction to enter the orders?

2. Was the evidence sufficient to support the court's order for temporary injunction?

3. Was the evidence sufficient to show that the individual defendants either knew of the injunction or personally violated it?

4. Were the individual defendants entitled to a jury trial on the contempt issue?

The original summons and complaint in this action were served and filed by the board of education in its own name. The order for temporary injunction and the order to show cause why the association should not be found in contempt for violation thereof were issued by the court while the board maintained the action in its own name only. At the January 14th hearing on the orders to show cause to contempt, the defendants were granted leave to amend their answer to deny the allegation in the complaint that the board was a body corporate and to allege as an affirmative defense that the action should be dismissed because the board did not have the capacity to maintain the suit. This allegation was admitted in the original answer. The board filed an amended summons and complaint in response to the defendants' amendments, joining the school district as a plaintiff, on February 1st. On February 18th, the complaint was further amended to join the city of Wisconsin Rapids.

In related motions at the contempt hearing, the defendants requested that the court set aside the order for temporary injunction and quash the order to show cause

for contempt brought on by the board on the grounds that the court lacked jurisdiction over the subject matter of the action because the board, acting as plaintiff, had no capacity to do so. In denying these motions the circuit court concluded that any jurisdictional defects were waived by the defendants' failure to raise them by demurrer or in the original answer. Further, the amended summons and complaint filed by the plaintiffs were held to have cured any defect which may have existed.

On appeal, the defendants contend that the injunction and contempt orders are void because the court lacked subject-matter jurisdiction. They argue that since the board of education lacked capacity to sue, it had no standing to litigate, and there was therefore no "case or controversy" before the court. The defendants contend that where no case or controversy exists, a court may not obtain subject-matter jurisdiction. An objection to the lack of jurisdiction over the subject matter of an action, the defendants correctly point out, can never be waived. *See: Harrigan v. Gilchrist* (1904), 121 Wis. 127, 99 N. W. 909; *Lees v. ILHR Department* (1971), 49 Wis. 2d 491, 182 N. W. 2d 245; sec. 263.12, Stats.

It is an accepted principle of law that an action cannot be maintained by one who has no capacity to sue.[1] In *State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553, this court stated that a board of education is not a body corporate and is not otherwise specifically authorized to sue or be sued.[2] Where it appears on the face of the complaint that the plaintiff has not the legal capacity to sue, defendant is required to object by demurrer. Sec. 263.06 (2), Stats. Where the defect does not appear on the face of the complaint, objection must be taken by answer under sec. 263.11. *See:*

[1] *See generally:* 59 Am. Jur. 2d, *Parties*, p. 386, sec. 31.

[2] *Also see: Seifert v. School District* (1940), 235 Wis. 489, 292 N. W. 286.

*Hughes v. Chicago, St. P., M. & O. R. Co.* (1906), 126 Wis. 525, 106 N. W. 526; *Union Free High School Dist. v. Union Free High School Dist.* (1934), 216 Wis. 102, 256 N. W. 788. In either case, failure to raise plaintiff's lack of capacity to sue waives the objection.[3]

Although we have stated that the failure to raise "capacity to sue" by demurrer or answer waives the objection, in view of the amended answer, albeit after the temporary injunction issued, we believe it appropriate to determine whether the board of education had the right to institute this action.

Both common school districts[4] and unified districts[5] have statutory authority to bring and defend actions. The statutory sections provided for city school districts[6] do not specifically provide that the district can or cannot commence or defend actions. None of the sections give the school boards as such specific authority to sue or be sued.

In the recent case of *Flood v. Board of Education* (1975), 69 Wis. 2d 184, 230 N. W. 2d 711, this court determined there are some instances where the interests of the board of education and the school district are so closely akin that the board of education should be recognized as a proper party. In the *Flood Case* the plaintiffs were nonunion member teachers and brought action against the school board challenging the constitutionality of a fair-share agreement in a collective bargaining contract entered into between the school board and the union representing the majority of the teachers.

At page 193 of the *Flood Case,* this court stated:

[3] *See:* Sec. 263.12, Stats.; *Wasielewski v. Racke* (1937), 225 Wis. 245, 272 N. W. 846, 273 N. W. 819; *Webber v. Ward* (1896), 94 Wis. 605, 69 N. W. 349; *Fey v. I.O.O.F. Mut. Life Ins. Society* (1904), 120 Wis. 358, 98 N. W. 206.

[4] Sec. 120.10 (14), Stats.

[5] Sec. 120.71 (2), Stats.

[6] Subchapter II, secs. 120.40 through 120.61, Stats.

"While there may be cases where the interests of the board of education may be different than that of the school district, and in such case the school district would not be bound by a judgment brought only against the board of education, the action here, as it was in *Barry* [*Barry Laboratories, Inc. v. State Board of Pharmacy* (1965), 26 Wis. 2d 505, 132 N. W. 2d 833], is for the determination of 'whether a course of official action is consistent with the . . . constitution.'

"A declaratory judgment in this action, which seeks to hold the statute itself unconstitutional, would be binding upon school boards and school districts or any municipal employer covered by sec. 111.70, Stats. Accordingly, the distinction which the plaintiffs urge here—a distinction which would be not without merit in some cases—is irrelevant in the instant case."[7]

In the *Flood* and *Teubert Cases* the litigation arose from contracts entered into by the school board and an unincorporated association respectively. In both of those cases it can be said the court applied an estoppel theory. The defendants entered into contracts they were authorized to enter into and should not be heard to say they could not be sued upon them.

In this case an estoppel theory cannot be applied, but there are kindred considerations that convince us the school board should be permitted to maintain this action.

Sec. 120.41, Stats., dealing with city school districts, provides: "General school law governs the schools of a city school district, insofar as applicable and in harmony with this subchapter." The general law as codified in sec. 120.12 dealing with district school boards, clearly gives the school board the authority to control and manage the school affairs. The board has the power to hire and fire, set curriculum, days of school and general management and control of the affairs of the school proper. It has the duty to see to it that classes are con-

---

[7] *See also: Teubert v. Wisconsin Interscholastic Athletic Asso.* (1959), 8 Wis. 2d 373, 99 N. W. 2d 100.

ducted on the statutory minimum number of days. It is the board of education which negotiates with the teachers or their representatives as to contracts that are entered into. These contracts encompass wages, conditions of employment and other matters of concern between the teachers and the school. It was because the negotiations between the board and union on the employment contract or collective bargaining agreement broke down that the teachers called the strike and the board sought the injunction. From the record in this case it is impossible to detect any conflict of interest between the school district or the city and the board of education. Their interests are identical and the results would be binding on all three. It was the board of education that was most conversant with the problem and the board of education that was charged with the responsibility of contract negotiations with teachers and daily operation of the school. The fact that action was brought in the name of the board of education rather than the district or city is irrelevant in this case.

Because we have determined that the board of education was a proper party in this case, we need not reach the issue on the amendment of the pleadings.

After the complaint was filed in this action, the circuit court, upon the plaintiff's motion, ordered the defendants to show cause why a temporary injunction and restraining order should not be granted. Following a hearing on this order, the court issued an order temporarily enjoining and restraining the defendants from continuing the strike and related activities. On appeal, the defendants contend that the evidence produced at the hearing on the order to show cause was insufficient to support the trial court's conclusion that irreparable harm had occurred or was threatened. The plaintiff, on the other hand, contends that the order for temporary injunction should be affirmed because the strike was illegal under sec.

111.70 (4) (1), Stats., and therefore enjoinable without a further showing of harm or, in the alternative, that the evidence supports the conclusion that a showing of irreparable harm had been made.

Injunctions are frequently sought in the context of a labor dispute. However, their use in this area has been limited in most states by statute. Wisconsin's "Little Norris-La Guardia Act," ch. 376, Laws of 1931, is representative of most such statutes. Secs. 103.56 (1)[8] and 103.62, Stats., place restrictions on the power of a court to issue injunctions in cases involving or arising out of labor disputes. The defendants imply that these restrictions should apply to this case.

While this court has not previously considered this issue, nearly all courts which have, have concluded that the provisions of state Little Norris-La Guardia Acts are inapplicable to suits brought by states or their political

[8] "103.56 Injunctions: conditions of issuance; restraining orders. (1) No court nor any judge or judges thereof shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in section 103.62, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegation of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of all the following facts by the court or judge or judges thereof:

"(a) That unlawful acts have been threatened or committed and will be executed or continued unless restrained;

"(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

"(c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon defendants by the granting thereof;

"(d) That the relief to be granted does not violate the provisions of section 103.53;

"(e) That complainant has no adequate remedy at law; and

"(f) That the public officers charged with the duty to protect complainant's property have failed or are unable to furnish adequate protection."

subdivisions against governmental employees.[9] These decisions follow the rationale of the supreme court in *United States v. Mine Workers* (1947), 330 U. S. 258, 67 Sup. Ct. 677, 91 L. Ed. 884. In that case, which involved the federal Norris-La Guardia Act, the court held that a labor dispute under 29 USCA, p. 53, sec. 113 (a) must involve persons who have a certain status or relationship to other persons, and persons does not include the federal government. State courts have held that state copies of the federal act do not apply to public employees in the absence of an express statutory provision that they should so apply.[10]

We conclude, consistent with the weight of authority, that Wisconsin's Little Norris-La Guardia Act applies only to labor disputes between private employers and their employees and that the trial court was not bound to make the specific findings required by sec. 103.56 (1), Stats.

This conclusion is supported by two further considerations. First, this court has carefully limited the application of these statutory restrictions on the courts' injunctive power to situations which fall clearly within their terms. Where the actions sought to be enjoined, for example, do not involve or grow out of a labor dispute, the restrictions are inapplicable. *See: Laundry, etc., Local 3008 v. Laundry Workers International Union* (1958), 4 Wis. 2d 542, 91 N. W. 2d 320; *Vogt, Inc. v.*

[9] *See generally:* 48 Am. Jur. 2d, *Labor and Labor Relations,* p. 916, sec. 1471.

[10] *See, e.g., City of Albuquerque v. Campos* (1974), 86 N. M. 488, 525 Pac. 2d 848; *Local 519 v. School City of Anderson* (1969), 252 Ind. 558, 251 N. E. 2d 15, rehearing denied, 254 N. E. 2d 329, certiorari denied, 399 U. S. 928, 90 Sup. Ct. 2243, 26 L. Ed. 2d 794, and cases cited therein at page 17; *Wichita Public School Employees Union v. Smith* (1964), 194 Kan. 2, 397 Pac. 2d 357; *City of Biddeford v. Biddeford Teachers Asso.* (Me. 1973), 304 Atl. 2d 387.

*International Brotherhood* (1955–1956), 270 Wis. 315, 71 N. W. 2d 359, 74 N. W. 2d 749, affirmed, 354 U. S. 284, 77 Sup. Ct. 1166, 1 L. Ed. 2d 1347. Secondly, Wisconsin has legislation which specifically applies to labor relations between municipalities and their employees.[11]

The provisions of the Little Norris-La Guardia Act being considered inapplicable, the common-law prerequisites to the issuance of injunctions furnish the guidelines by which the circuit court's order is to be reviewed. The primary source of authority for the issuance of temporary injunctions is found in sec. 268.02 (1), Stats.:

"When it appears from his pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure him, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act."

Under that section a temporary injunction will not be issued without a showing of a lack of adequate remedy at law and irreparable harm.[12]

It is a basic rule that the granting or refusal of a temporary injunction is a matter lying within the discretion of the trial court and its determination will not be upset unless an abuse of discretion is shown.[13] Perhaps

[11] *See:* Municipal Employment Relations Act, sec. 111.70 et seq., Stats.

[12] *Pure Milk Products Coop. v. NFO* (1974), 64 Wis. 2d 241, 219 N. W. 2d 564; *Fromm & Sichel, Inc. v. Ray's Brookfield, Inc.* (1966), 33 Wis. 2d 98, 146 N. W. 2d 447; *Simenstad v. Hagen* (1964), 22 Wis. 2d 653, 126 N. W. 2d 529; *Hartung v. Milwaukee County* (1957), 2 Wis. 2d 269, 86 N. W. 2d 475, 87 N. W. 2d 799; *Klump v. Cybulski* (1957), 274 Wis. 604, 81 N. W. 2d 42.

[13] *Shearer v. Congdon* (1964), 25 Wis. 2d 663, 131 N. W. 2d 377.

the best test stated for the determination of whether there has been an abuse of discretion is that contained in *McCleary v. State* (1971), 49 Wis. 2d 263, 277, 182 N. W. 2d 512. In that case this court indicated that an abuse of discretion may occur under the following circumstances: (1) Failure of the trial judge to consider and make a record of factors relevant to a discretionary determination in a particular case; (2) consideration of clearly irrelevant or improper factors; and (3) clearly giving too much weight to one factor.

As a general rule, of course, whether an injunction should be granted depends upon all the facts and circumstances of a particular case.

The primary issue in this case is whether the facts and circumstances warranted a finding of irreparable harm. In ordering the temporary injunction, the trial court concluded that irreparable harm was shown by the following factors: (1) The illegal nature of the strike; (2) inability of the board to operate the school system and thereby meet its statutory duties and responsibilities to the taxpayers in the school district; (3) inability of the students to obtain the benefits of a tax-supported educational process; (4) possible loss of state aids; (5) inability of parents to comply with statutory responsibility to educate their children; and (6) cancellation of athletic events and other school activities.

Since the trial court clearly set out the factors which influenced its determination on the record, this court may not find an abuse of discretion under *McCleary, supra,* unless either the factors considered were clearly irrelevant or improper or too much weight was given to one factor. The defendants do not contend that the evidence does not support the individual findings of the trial court, as set out above, but contend that these factors were insufficient to establish irreparable harm.

The plaintiffs contend that the fact that the strike was illegal is enough to warrant the issuance of the injunction without an express showing of harm. Strikes by municipal employees are expressly prohibited by the terms of sec. 111.70 (4) (1), Stats.:

**"Strikes prohibited.** Nothing contained in this subchapter shall constitute a grant of the right to strike by any county or municipal employe and such strikes are hereby expressly prohibited."

This court recently held in *Hortonville Education Asso. v. Joint School Dist. No. 1* (1975), 66 Wis. 2d 469, 225 N. W. 2d 658, that the statutory ban on strikes by municipal employees is constitutionally valid. There is no dispute in this case that the association was engaged in a strike.

There is considerable support in the cases from other jurisdictions for the proposition that where public employees are engaged in a strike which is made illegal by reason of legislative or judicial decision, an injunction may be issued without a further showing of irreparable harm.[14] That unlawful activity may be enjoined in the absence of an express showing of irreparable damage has been recognized by this court. *Vogt, Inc. v. International Brotherhood, supra.* The express basis for such holdings is that the fact that the activity has been declared unlawful reflects a legislative or judicial determination that it would result in harm which cannot be countenanced by the public. In short, a ban on public employee strikes is deemed indicative of a legislative public policy determination that such activity will cause irreparable harm to the public and therefore may be enjoined without the

[14] *See generally:* Annot. (1971), *Labor Law: Right of Public Employees to Strike or Engage in Work Stoppage,* 37 A. L. R. 3d 1147, 1176, sec. 12 [a]; *City of Grandview v. Moore* (Mo. App. 1972), 481 S. W. 2d 555; *City of Pana v. Crowe* (1974), 57 Ill. 2d 547, 316 N. E. 2d 513; *City of Rockford v. Local No. 413* (1968), 98 Ill. App. 2d 36, 240 N. E. 2d 705.

presentation of evidence of actual harm in a particular case.

Nevertheless, the key prerequisite to injunctive relief— irreparable harm—remains, and a court should not restrain illegal acts merely because they are illegal unless the injury sought to be avoided is actually threatened or has occurred.

Sec. 111.70 (6), Stats., provides:

"DECLARATION OF POLICY. The public policy of the state as to labor disputes arising in municipal employment is to encourage voluntary settlement through the procedures of collective bargaining. Accordingly, it is in the public interest that municipal employes so desiring be given an opportunity to bargain collectively with the municipal employer through a labor organization or other representative of the employes' own choice. If such procedures fail, the parties should have available to them a fair, speedy, effective and, above all, peaceful procedure for settlement as provided in this subchapter."

This declaration of policy demonstrates a clear legislative intent that municipal labor disputes should be settled by the parties themselves without outside intervention. Where collective bargaining fails, sec. 111.70 (4) (c), Stats., sets forth preferred alternative procedures for the enlistment of outside aid. Judicial intervention appears to be intended as an alternative of last resort to be employed when all else fails.

In addition, several practical considerations militate against the easy availability of injunctive relief. Attorney Michael R. Wherry has outlined these considerations:

"Since a courtroom controversy oftentimes hardens the positions of the parties, many experts in the municipal labor field feel that attempts to obtain injunction relief should be avoided except as a last resort. Some reasons for this position are: (1) The commencement of court proceedings tends to incite other municipal labor groups not directly involved to become more militant in their own recurring negotiations with the municipal employer;

(2) The adversary posture of the parties in the courtroom setting creates a great deal of ill-will long after the dispute has ultimately been resolved; (3) With the commencement of a court suit the parties often view the situation as a 'crossing of the Rubicon' insofar as further movement from their respective positions; (4) The possible failure of the initial application for a temporary injunction can damage the bargaining position of the municipal employer by removing the threat of an imminent injunction." Moberly and Mulcahy, *Public Employment Labor Relations*, "Strikes, Injunctions and Interrelated Court Proceedings," ch. 5, p. 119.

Public employment strikes are a reality which cannot be ignored. While the potential for immediate and serious harm to public health and safety is very real in the case of strikes by policemen, firemen and, to a lesser extent, sanitation workers, it is not critical where, for example, the strike is one by teachers, clerical employees or construction workers and others. We conclude in this case that immediate and serious harm to public health and safety was not apparent and that an injunction should issue only after a showing of irreparable harm dependent upon the facts and circumstances as shown at the hearing.

The record in this case demonstrates that the trial judge fully considered all the circumstances of the case before concluding that there existed a basis for a finding of irreparable harm. We conclude that none of the factors considered were irrelevant or improper and that no excessive weight was given to one factor at the expense of other, contravening considerations. Therefore, no basis for a finding of abuse of discretion exists. *McCleary v. State, supra.* Defendants' argument that no irreparable harm had occurred as of the date that the injunction was ordered, even if considered true, is of no weight in light of the rule that an injunction may be issued where such harm is threatened or imminent. *See: Simenstad v. Hagen, supra; Lakeside Oil Co. v. Slutsky*

(1959), 8 Wis. 2d 157, 98 N. W. 2d 415. In this case, the trial judge had no assurance that the strike would come to an early end. There was an adequate showing of irreparable harm and the injunction properly issued.

The order for temporary injunction, issued on January 7th, was to be effective as of 6:45 a. m., on January 8th. The strike continued after that time. Both sides then secured orders to show cause why the other should not be found in contempt for failing to comply with the order. Following a hearing on those orders on January 14th, the court found the defendants in contempt and ordered that each member of the association be fined and the fines deducted from their salaries as provided by sec. 111.70 (7), Stats.[15] The defendants challenge the contempt finding on the ground that there was insufficient proof of notice in two respects: (1) Notice or knowledge of the order for temporary injunction; and (2) notice of the contempt hearing for violation of that order.

It is the general rule that where a party to a suit in which an order for temporary injunction has been issued has actual notice of that order, even though it may not have been served on him, he is bound by it and may be punished for a violation thereof. *Stollenwerk v. Klevenow* (1912), 151 Wis. 355, 139 N. W. 203. The defendants point out that a number of individual members of the association were not served with the order for temporary injunction and contend that the evidence does not support a finding that they otherwise had actual knowledge of the order.

[15] "PENALTY FOR STRIKER. Whoever violates sub. (4) (1) after an injunction against such a strike has been issued shall be fined $10. After the injunction has been issued, any employe who is absent from work because of purported illness shall be presumed to be on strike unless the illness is verified by a written report from a physician to the employer. Each day of continued violation constitutes a separate offense. The court shall order that any fine imposed under this subsection be paid by means of a salary deduction at a rate to be determined by the court."

At the January 7th hearing on the order to show cause why a temporary injunction should not be issued, the following exchange between the court and counsel for both sides followed the court's in-court determination that the order would issue:

"*Mr. Podvin* [for plaintiffs] : With respect to the temporary injunction, I would request that the court give us some help in regard to the service of these papers and notification of the members of the Wisconsin Rapids Education Association, and I would suggest that there be some type of meeting called.

"Obviously the whole community and the teachers are aware that we had this proceeding today, and I would like some place to give them proper notification of the order of the court with respect to this proceeding.

"*The Court:* Mr. Ehlke, I don't think that's an unreasonable request. Do you have any suggestion?

" . . .

"*Mr. Ehlke* [for defendants] : We can do whatever— There are no meetings of the organization which are presently scheduled. There are, as has been indicated; we have hundreds of people. The Association will—The officers of the Association will make every effort to call an organizational meeting, or a meeting of the people that it represents prior to quarter of 7:00 tomorrow morning, and when the meeting has been arranged, we'll inform Mr. Podvin or an appropriate deputy sheriff or whomever he wished of the time and place of the meeting, so that someone can be present at that time to inform them —the people assembled, or, proceed this afternoon."

When the hearing on the orders to show cause for contempt was held on January 14th, Wood County Sheriff Thomas Forsyth testified to the manner in which he attempted to serve the order for temporary injunction. Sheriff Forsyth stated that he attended a meeting of the association at 6 a.m., on the morning of January 8, 1974. Using a roster of teachers supplied by the district, he placed a checkmark next to the name of each teacher who answered the roll call at the meeting. In addition, he placed a small "p" next to the names of those who were

personally served with the order and as to whom certificates of service were filed. Using the public address system, he then read the order for temporary injunction to those at the meeting. The record indicates checkmarks next to the names of 213 teachers and personal service on 66 teachers.

The defendants contend that the only teachers who had actual knowledge of the order for temporary injunction were those who had been personally served therewith. They point out that, on cross-examination, Sheriff Forsyth testified that he had no independent knowledge that those teachers next to whose names he placed a checkmark were actually present at the meeting. This argument is without merit. The problems of notification in cases involving large numbers of people are well-known. *See, generally, Mullane v. Central Hanover Trust Co.* (1950), 339 U. S. 306, 70 Sup. Ct. 652, 94 L. Ed. 865. The record clearly shows that plaintiff made as good an effort at notification as could have been made under the circumstances. This is especially true in view of the defendants' express agreement at the January 7th hearing to the manner in which notice was to be given. Therefore, the 213 teachers who were indicated to be present at the meeting where the order was read are considered to have had actual knowledge of the order.

A more serious question is raised as to those teachers who were neither personally served nor indicated as in attendance at the January 8th meeting. At the January 14th hearing on the orders to show cause for contempt, plaintiffs were successful in gaining the admission into evidence of the January 7th edition of "The Daily Tribune," a daily newspaper of general circulation in the Wisconsin Rapids area. On the front page of that paper appears a story detailing the circuit court's decision to order the temporary injunction. In admitting the newspaper the court expressly noted that there may have been teachers who did not read that paper, and that

therefore the paper would not be accepted as "proof that they did have actual knowledge of the issuance of the temporary injunction."

In 48 Am. Jur. 2d, *Labor and Labor Relations*, p. 950, sec. 1527, it is stated:

"There is no presumption of knowledge of the provisions of a labor injunction by a striking union member not served with a copy of the order. Actual knowledge must be established—but actual knowledge may be inferred from the facts. In a contempt proceeding for wilful violation of an injunctive order issued in a labor dispute, it is not incumbent upon the plaintiff to show by positive evidence that the alleged contemnor actually read the restraining order, or that it was read to him, or that by some other means he had knowledge of the exact words used in the order. The knowledge requirement is met if the person proceeded against had knowledge that the restraining order had been issued and had actual notice of the substance of the provisions which he violated. Pickets have been held properly found to have had actual knowledge of an injunctive order where there is testimony that when the injunction issued they were instructed by the union to honor it. But the publication of an injunctive order in newspapers and the posting thereof on the employer's vehicles have been held not of themselves sufficient to charge with notice of the order one interfering with the vehicles, as against his express denial of knowledge of the order."

The record reveals 317 teachers were found in contempt of court for failure to comply with the order and statutory fines of $10 per day for eight days were deducted from their salaries. We conclude there was not sufficient evidence from which the court could find that those teachers who were neither personally served nor indicated as in attendance at the January 8th meeting had actual knowledge of the order for temporary injunction.

The trial court did indicate that those teachers who were not aware of the order for temporary injunction could be excused from the contempt finding by presenting themselves to the court for an individual determination

on that issue. The burden of establishing knowledge in such a case appears to be on the party claiming violation of the order—in this case the board of education. The court's power to punish for contempt has been characterized as drastic and extraordinary. *Appeal of Cichon* (1938), 227 Wis. 62, 278 N. W. 1. The court's attempt to remedy the apparent proof deficiency was inadequate to support a contempt conviction for the teachers in question.

In *O'Connor v. O'Connor* (1970), 48 Wis. 2d 535, 180 N. W. 2d 735, this court held that before one may be punished for contempt he must be notified of the charge against him and be given an opportunity to present a defense to that charge. This is necessary, the court held, to meet the constitutional requirement of due process. The defendants contend that the contempt convictions must be reversed because most of the individuals found in contempt were not personally served with the order to show cause therefor and, as a result, had no notice of the charge against them. The record shows that the order to show cause why the association and its members should not be found in contempt for violating the order for temporary injunction was personally served on 80 members of the association.

We are not aware of a Wisconsin case that determines what procedures are necessary to satisfy the notice requirement in contempt cases. However, it appears that the primary reason for the requirement is that the contemnor has an opportunity to appear and present whatever defense he might have to that charge. *See: In re Oliver* (1948), 333 U. S. 257, 68 Sup. Ct. 499, 92 L. Ed. 682. A formal notice of the charge by way of personal service of the order to show cause is not always required.[16]

---

[16] *See:* Note, *Service in Civil Contempt Proceedings,* 38 St. John's L. Rev. (1964), 341, 349.

Plaintiffs contend that the *O'Connor* requirement was satisfied by the fact that counsel for defendants were present at the hearing on the order to show cause for contempt and were given an opportunity to present evidence on the issue of whether all members of the association had violated the order, but declined to do so. This argument begs the question: Whatever defense counsel did or failed to do at the hearing could affect only those members who had actual knowledge of the hearing.

The matter comes down to a determination of whether any of the members of the association, aside from the 80 upon whom personal service was effected, actually knew of the contempt charge and the hearing thereon. It is probable that, as a practical matter, all teachers in the district did know. It is absurd to contend that more than a few residents in the whole community, much less the teachers who were directly involved, were not aware of the day-to-day developments. The problem presented is in finding support in the record for this conclusion which will satisfy the formal requirements of due process.

As has already been indicated, 213 teachers had knowledge of the contents of the order for temporary injunction. They were present at the meeting where the order was read. That order provided in part:

"It is further ordered that both parties to this action will report to the court on or before January 11, 1974, at 3:00 p.m. as to the progress of the negotiations."

In the order to show cause why the defendants should not be found in contempt for violating the order for injunction, defendants were instructed to appear in circuit court "on the 11th day of January, 1974, at 3:00 o'clock in the afternoon, or as soon thereafter as counsel can be heard."

The record indicates that on Friday, January 11, 1974, defense counsel was present when the court convened

at 5:15 p.m. At the opening of the proceedings on that day, the trial judge stated:

"*The Court:* Before proceeding in this matter, I wish to apologize to you people who have been waiting here for over two hours for the commencement of these proceedings, and particularly to those who were summoned here by the direction of the court, referring mostly to the teachers who were ordered to appear here on the contempt proceedings."

Because of the lateness of the hour, counsel for the defendants made a motion that the proceedings be adjourned until the following Monday, January 14th. In granting this motion, the trial judge stated:

"All of those people who are present here because of a notice or an order to appear at this hearing are, at this time, notified by the court that they are required to appear here on January 14th at 2:00 p.m. in the courtroom."

While it is not a matter of record which teachers were in attendance at the January 11th proceedings, it is clear that counsel for the defendants were present. It is apparent that they were there as representative of the 213 teachers who were notified of the hearing to determine progress being made in the negotiations, which hearing was scheduled for that day. It is also clear that defense counsel were notified by the court of that order on that day.

This is not a criminal contempt but rather a civil contempt proceeding. Actual notice of the contempt hearing by counsel who represented at least 213 teachers who were notified of the injunction was sufficient notice to comply with due process requirements. Further, the trial court extended to all teachers present in the courtroom, and to counsel on behalf of all others, the opportunity to show a lack of knowledge of the injunction or

notice of the contempt hearing. With the exception of one teacher, none responded.

The defendants also contend that the finding of contempt is not supported by evidence sufficient to show that the order for temporary injunction was actually violated. They argue that the order could not have been violated because it was conditioned upon the board continuing to bargain in good faith and there was no showing that this condition had been met. They also argue that there was no proof that each individual member of the association who was fined for violating the injunction had, in fact, violated it. Both arguments must fail because, as will be noted, defendants had the burden of proof on these issues but failed to present evidence which would support the finding for which they argue.

The order for temporary injunction which was read at the January 8th meeting of the association contained the following provision:

"This order is conditioned upon the plaintiff, Board of Education, continuing to negotiate and bargain in good faith as set forth in the Wisconsin Statutes with the defendant, Wisconsin Rapids Education Association."

In its decision from the bench that the order for temporary injunction would issue, the trial court stated:

". . . if the plaintiff wants this temporary injunction continued, it must continue to negotiate and in good faith, and of course the same is true as to the defendants; they also must continue to negotiate in good faith and I think it is clear that by negotiating in good faith this court means that there is going to have to be adjustments and changes made in the position of both parties here, particularly on the important issue here of salary adjustment."

At the January 14th hearing on the orders to show cause for contempt, Richard Smith, chairman of the association's negotiating committee, testified that he did not believe he was in violation of the injunction for

refusing to return to work because he felt the board had not fulfilled the condition requiring it to continue to bargain in good faith. He stated further that he understood the condition to mean that there "should be monetary movement by both sides."

It is clear, however, that the written order imposed no such condition. Smith's testimony indicated that his interpretation of that order was based on Judge Levi's oral statements made on the record upon determining that the injunction order would issue. This interpretation was made at his own risk.

". . . It appears that the alleged contemnor may not set up his opinion as to the meaning of the injunction against the court's opinion. If the alleged contemnor has any doubt as to what he may do without violating the injunction, he should ask a modification of the injunction or a construction of its terms." 17 Am. Jur. 2d, *Contempt*, p. 15, sec. 8.

The trial court held that the burden of proof in the contempt proceeding was with the defendants. The court concluded that the defendants failed to prove either that the strike had not continued or that the board had not continued to bargain in good faith. In *Balaam v. Balaam* (1971), 52 Wis. 2d 20, 187 N. W. 2d 867, this court held that in a civil contempt proceeding, other than a prima facie showing of a violation of the order, the burden of proof is on the person against whom contempt is charged to show his conduct was not contemptuous. *See also: In re Adam's Rib, Inc. (Kaminsky)* (1968), 39 Wis. 2d 741, 159 N. W. 2d 643. On appeal, the defendants do not directly challenge this rule, but do contend that the evidence is insufficient to show that each individual member of the association violated the injunction or that the board had fulfilled its obligation to bargain in good faith.

Only two witnesses testified on these issues at the January 14th hearing. Donald Rehfeldt, chairman of the

personnel committee of the board of education, stated that the board had been unable to open or operate schools from January 8th to January 14th because there was not "enough staff in order to operate." Rehfeldt further stated that the personnel committee had met with the association's welfare committee for the purpose of negotiation on January 7th, 8th, 10th, 11th and 13th. Rehfeldt testified that during that time, the board had modified its previous monetary proposals in three areas (salary base, noon supervising duty, and girls' athletics) and had conceded to association demands for fair share. Richard Smith, of the association, stated that he had not reported to work in response to the injunction, and concluded that whether there were enough teachers to hold school was a determination to be made by the board. Smith denied that the concession by the board on the girls' athletic issue came after the issuance of the injunction. Given an opportunity to present further evidence on the matter, counsel for defendants declined.

This evidence supports the trial court's conclusion that the order for temporary injunction had been violated and that the board had bargained in good faith. The court carefully limited its finding to one of civil contempt. Under *Balaam, supra,* defendants had the burden to show that they had not violated the order for temporary injunction. Except for the testimony of Richard Smith, no attempt was made to meet that burden. The court specifically excluded from the contempt finding those teachers who had reported for work and whose names were provided by the board of education. Further, the court specifically afforded other teachers who may have felt that they had made a "good-faith effort to comply with the court's order" an opportunity to avoid the contempt finding by presenting themselves to the district's personnel director who was instructed to relay the information to the court. In view of the rule as to

burden of proof, this option is not contrary to due process requirements. The record does not show that any teachers took advantage of this opportunity. The evidence is sufficient to support the finding of contempt.

At the January 14th hearing, counsel for the defendants made a request for a jury trial on the contempt charge, which request was denied. Defendants based their request on the provisions of sec. 103.60 (3), Stats.:

"Upon demand, the right to a speedy and public trial by an impartial jury of the county wherein the contempt shall have been committed, provided that this requirement shall not be construed to apply to contempts committed in the presence of the court or so near thereto as to interfere directly with the administration of justice or to apply to the misbehavior, misconduct, or disobedience of any officer of the court in respect to the writs, orders, or process of the court. All contempt proceedings, whether civil or criminal, brought for the alleged violation of any such restraining order or injunction, are, and hereby are declared to be independent, original, special proceedings, and shall require a unanimous finding of the jury."

The defendants also contend on appeal that this right is secured by the constitution.

We conclude that the trial court correctly held that the cited section of the Little Norris-La Guardia Act did not apply to contempt proceedings involving municipal employees for reasons set forth earlier in the opinion.

In *Upper Lakes Shipping v. Seafarers' International Union* (1964), 23 Wis. 2d 494, 128 N. W. 2d 73, this court held that the fourteenth amendment due process does not require that a contemnor in a civil contempt proceeding in a state court be tried by jury. *See also: State v. Ross* (1951), 259 Wis. 379, 48 N. W. 2d 460. The United States Supreme Court has held that a jury trial is required only in cases involving criminal contempt where the penalty imposed is serious. *See: Bloom*

*v. Illinois* (1968), 391 U. S. 194, 88 Sup. Ct. 1477, 20 L. Ed. 2d 522; *Frank v. United States* (1969), 395 U. S. 147, 89 Sup. Ct. 1503, 23 L. Ed. 2d 162.

In Wisconsin, a civil contempt occurs when the violation of an injunctional order tends to defeat, impair, impede or prejudice the rights or remedies of the other party. *Wisconsin Employment Relations Board v. Allis-Chalmers Workers' Union* (1946), 249 Wis. 590, 25 N. W. 2d 425. While the same conduct may constitute both a civil and criminal contempt, a civil contempt is involved if the punishment is a fine imposed until there is obedience to the court order. *See: Wisconsin Employment Relations Board v. Mews* (1965), 29 Wis. 2d 44, 138 N. W. 2d 147. The penalty imposed by the court in this case is specifically authorized by sec. 111.70 (7), Stats.:

"PENALTY FOR STRIKER. Whoever violates sub. (4) (1) after an injunction against such a strike has been issued shall be fined $10. After the injunction has been issued, any employe who is absent from work because of purported illness shall be presumed to be on strike unless the illness is verified by a written report from a physician to the employer. Each day of continued violation constitutes a separate offense. The court shall order that any fine imposed under this subsection be paid by means of a salary deduction at a rate to be determined by the court."

It appears clear that the statute envisions a penalty which may continue until the order for injunction is obeyed. In imposing the penalty, the trial court provided that the striking teachers would be liable for the $10 fine for each day (starting with the 8th of January) they were on strike, but provided that if they went back to work on or before 6:45 a.m., on Wednesday, January 16th, no fines would be imposed. They did not return on January 16th and the fines were imposed.

All of the orders appealed from should be affirmed except the order finding 317 teachers in contempt. The

contempt finding and fines pursuant thereto should be limited to the 213 teachers notified of the injunction, and fines collected from those in excess of the 213 should be remitted. Further, upon remand, if the record as now made reveals any of the 213 teachers notified of the injunction did in fact comply with it, their contempt findings should be reversed and fines remitted.

*By the Court.*—Orders modified and, as modified, affirmed and remanded for further proceedings consistent with the opinion. No costs to be taxed on this appeal.