KUNTZ, Appellant, vs. WERNER FLYING SERVICE, INC., and others, Respondents.

*June 8—June 30, 1950.*

406

The case was submitted for the appellant on the brief of *Frank E. Hebert* of Tomahawk, and for the respondents on the brief of *James D'Amato* and *Robert T. McGraw,* both of Waukesha.

MARTIN, J. It is appellant's contention that low flights over the plaintiff's land violate civil air regulations and particularly sec. 60.105 of the civil air regulations which provides minimum safe altitudes:

"Except when necessary for taking off and landing, aircraft shall be flown:

"(a) when over the congested areas of cities, towns, settlements, or open-air assemblies of persons, at altitudes sufficient to permit emergency landings outside such areas and in no case less than one thousand feet above such areas, and

"(b) when elsewhere than as specified in paragraph (a), at an altitude of not less than five hundred feet, except over water or areas where flying at a lower altitude will not involve hazard to persons or property on the surface."

The appellant construes the words "except when necessary for taking off and landing" to mean, in the case of emergency landings, when they mean that an aviator is given permission to use the airspace above another's land, in landing or taking off, at heights below those altitudes later specified to be minimum safe altitudes.

It was stated in *Antonik v. Chamberlain* (1947), 81 Ohio App. 465, 474, 78 N. E. (2d) 752:

"In order that effect may be given to the regulations permitting flight in the public domain, the words of the regulations—'Except when necessary for take-off or landing'—must be construed to mean that a right is given to fly over the lands of others at heights of less than five hundred feet, when necessary for take-off or landing. . . .

"We reject the theory of trespass under these circumstances, unless the acts of landing and taking off are done under such circumstances as to constitute an abuse of the license."

It is undisputed that it is necessary on occasions when landing and taking off to fly low over plaintiff's property and that it is dangerous to attempt to avoid flying over plaintiff's land. Defendants' runway cannot be relocated or moved from its present site. The civil aeronautics administration regulations do not specify the minimum height of a flight of aircraft over a person's land when the aircraft is taking off or landing and, therefore, the flights complained of are within the flying regulations and do not constitute an abuse of the license.

The present case is not in point factually with *Maitland v. Twin City Aviation Corp.* (1949), 254 Wis. 541, 37 N. W. (2d) 74, where the only part of the land in question was a five-acre tract which was not in a direct line with any runway of the defendant's airport and it was found that the planes were flying at an altitude unnecessarily low and lower than permitted by flying regulations. That is why the court stated (p. 550):

"The injunction restrains defendant from doing that which is already prohibited by flying regulations. There can be no serious hardship or inconvenience to the defendant."

The record shows: That the defendants' airport was an authorized flight-training school under the G. I. bill of rights and that the president and general manager of the airport has instructed about thirty students under that veterans' program; that the airport is a commercial airport which members of the general public, other than the defendants, use regularly; and that the airport facilities have been used by heavy twin-engine planes.

The interest of the public in injunctional cases of this nature has been recognized by courts. It was held in *Delta Air Corp. v. Kersey* (1942), 193 Ga. 862, 872, 20 S. E. (2d) 245, that sufficient facts had been alleged to state a nuisance as opposed to a demurrer to the complaint, but stated:

"From all that appears, the conditions causing the low flying may be remedied; but if on the trial it should appear that it is indispensable to the public interest that the airport should continue to be operated in its present condition, it may be that the petitioner should be denied injunctive relief."

And, in *Antonik v. Chamberlain, supra,* it was said (p. 475):

"We must recognize that the establishment of an airport of the kind contemplated is of great concern to the public, and

if such an airport is abated, or its establishment prevented, the consequences will be not only a serious injury to the owner of the port property but may be a serious loss of a valuable asset to the entire community."

The main issue is whether the operation of the airport by the defendants constitutes a nuisance. The weight of authority seems to be that a private airport and flying school is not a nuisance *per se*. *Swetland v. Curtiss Airports Corp.* (6th Cir. 1932), 55 Fed. (2d) 201, 203, 83 A. L. R. 319; 2 C. J. S., Aerial Navigation, p. 909, sec. 29.

There is no evidence in the present case that the operation of defendants' airport is a nuisance in fact, for no illegal acts have been performed by the defendants. The flying is in conformity with the state and federal flying regulations.

It was stated in *Maitland v. Twin City Aviation Corp., supra,* (p. 549):

"The prayer for injunctive relief is addressed to the sound discretion of the trial judge. *It should not be granted where the inconveniences and hardships caused outweigh the benefits.* It should only be granted where there is an irreparable injury." [Italics ours.]

The defendants' airport represents a capital investment of $20,000, exclusive of the land, and this investment is not only important to the defendants personally but to the general public. The activities of an airport might be very annoying to persons residing in the neighborhood, but the legislative policy of state and federal governments is to encourage aviation. The plaintiff's chief benefit from an injunction would be to prevent a possible future loss of chickens.

It is stated in 43 C. J. S., Injunctions, p. 455, sec. 25:

"As the principal remedy afforded by courts of law for an injury is money damages, if such damages will constitute an adequate compensation for the injury threatened or inflicted, equity will not interfere by injunction. In such case plaintiff must resort to an action at law for the damages

sustained, and especially is this doctrine applicable where the granting of an injunction would inconvenience the public."

We find no abuse of discretion in the judgment of the trial court denying plaintiff injunctive relief. The acts complained of do not constitute a nuisance; the plaintiff has not suffered such an irreparable injury so as to render an injunction necessary; and the plaintiff has adequate remedy at law for any future damages, if any, he may sustain. In view of our conclusions, no useful purpose would be served in construing the ordinance of the city of Tomahawk relating to chicken coops.

*By the Court.*—Judgment affirmed.