CULLIGAN, INC., Respondent, vs. RHEAUME and others, Appellants.

*February 10—March 8, 1955.*

For the appellants there were briefs by *Muchin & Muchin* of Manitowoc, and *Welsh, Trowbridge, Wilmer & Bills* of Green Bay, and oral argument by *F. N. Trowbridge* and *Arden A. Muchin.*

For the respondent there was a brief by *Clark, Rankin & Nash* of Manitowoc, and oral argument by *A. F. Rankin.*

BROWN, J.    These actions were before us on an appeal from an order allowing an inspection of documents, reported in *Culligan, Inc., v. Rheaume* (1954), 268 Wis. 298, 67 N. W. (2d) 279. The present appeal is by the defendants from an order granting a temporary injunction which restrains them from continuing certain activities in which they have engaged. The pleadings and numerous supporting affidavits disclose the following facts which we consider material.

One Culligan developed a process or technique of softening water on the premises of a water user. To exploit this method of water softening, Culligan organized a corporation which has had several names but is now known as Culligan, Inc., the plaintiff. He turned over to it his discovery or invention and for a consideration Culligan, Inc., licenses individuals or corporations to soften water commercially, as Culligan Plan operators, using the Culligan name and method and

employing in the process Culligan's approved materials and equipment. Such a license was issued by Culligan to one Isbell on April 1, 1941, which, with Culligan's consent, Isbell assigned to defendant Rheaume January 5, 1944. Defendant Soft Water Service, Inc., also known as Culligan Soft Water Service, was incorporated by Rheaume to conduct the business permitted by the license and pursuant to it the corporation operates the Culligan Plan in Manitowoc county. Rheaume is an officer, director, and stockholder of this corporation.

This license, or contract, or franchise as it is variously termed, provides that the licensee shall have the exclusive right to distribute Culligan-type water softeners in the county of Manitowoc for twenty-five years beginning April 1, 1941. The licensee agrees to buy from Culligan all his requirements of water-softening equipment, parts, and materials. Culligan contracts to sell these to him and to guarantee their quality and to give the licensee technical advice, assistance, and laboratory service. The licensee covenants and agrees further, "that he will not engage in any way, directly or indirectly, either as an individual or by, or through any corporation, or partnership, in any phase of the water-softening-service business during the life of this agreement except under and pursuant to this agreement."

In 1948 Rheaume organized another corporation, the defendant Soft Water Supply Company, and was an officer, director, and principal stockholder of that. Defendants' answer alleges this company was formed to sell water-softening supplies for resale to the ultimate consumer and engages in no other activity.

Defendant Granger, like Rheaume, is an officer, director, and principal stockholder in both the Soft Water Supply Company and Soft Water Service, Inc.

The complaint and supporting affidavits allege that the defendant Soft Water Supply Company sells to the operators

.of water-softening businesses, including the defendant Soft Water Service, Inc., materials and equipment which imitate those put out by Culligan and on which appear labels and emblems imitating Culligan's, so that the public is deceived. Sales by the Soft Water Supply Company to holders of Culligan franchises throughout the country form a large part of the Supply Company's business. The merchandise so sold is alleged to be frequently marked and advertised in imitation of the genuine Culligan product and because Culligan has no control over its quality the deception thus practiced on the purchaser causes irreparable damage to the plaintiff.

The complaint and plaintiff's affidavits allege, and the answer denies, that the defendant Rheaume makes false and slanderous statements to service operators concerning the Culligan process and merchandise to divert their purchases from Culligan to his own Soft Water Supply Company. In so far as many of these customers hold licenses from Culligan restricting their purchase of material and equipment to that sold by Culligan, it is alleged that this conduct by Rheaume induces the breach of their contracts with Culligan.

The court granted the following temporary injunction:

"Ordered, that *pendente lite* and until the further order of the court:

"The defendants William Rheaume, William W. Granger, Soft Water Service, Inc., a Wisconsin corporation, and Soft Water Supply Company, a Wisconsin corporation, all of the city of Manitowoc, Wisconsin, their directors, officers, agents, employees, and representatives, do absolutely desist and refrain henceforth from directly or indirectly selling, offering for sale, or soliciting the sale of any of the items of merchandise of the description listed on Exhibit 'A' attached hereto, used or useful in the Culligan Plan, Culligan water-conditioning system or in the Culligan soft-water-servicing business, to any of the persons, firms, partnerships, corporations, or associations, which now or hereafter may constitute the so-called Culligan Soft Water Service operators doing

business in the municipalities shown on the list attached hereto as Exhibit 'B;' and that

"The defendants William Rheaume and Soft Water Service, Inc., a Wisconsin corporation, both of Manitowoc, Wisconsin, do absolutely desist and refrain henceforth from directly or indirectly purchasing any of the items of merchandise listed on Exhibit 'A' attached hereto from the defendant Soft Water Supply Company, a corporation, its directors, officers, agents, employees, or representatives and/or from any other source except Culligan, Inc., the plaintiff in this action, and that said defendants William Rheaume and Soft Water Service, Inc., do desist and refrain from reselling any of said items which may be purchased by them from Culligan, Inc., except to the soft-water-service customers of Soft Water Service, Inc., or of William Rheaume, in Manitowoc county, Wisconsin; and that

"The defendants William Rheaume, William W. Granger, and Soft Water Supply Company, a Wisconsin corporation, all of Manitowoc, Wisconsin, their directors, officers, agents, employees, and representatives, do absolutely desist and refrain henceforth from directly or indirectly selling, offering for sale, or soliciting the sale to anyone of any articles bearing the Culligan name, trade-mark, insignia, or emblem.

"Further ordered, that this injunction order shall become effective upon the plaintiff herein giving and filing an undertaking, as required by law, in the amount of one hundred thousand dollars."

Sec. 268.02 (1), Stats., provides as follows:

"When it appears from his pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure him, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act."

The power of the court to grant a temporary injunction is a discretionary one. The court which is to exercise the

discretion is the trial, not the appellate, court. 43 C. J. S., Injunctions, p. 426, sec. 14. The trial court's exercise of discretion will not be reversed on review except for an abuse of discretion. *Fassbender v. Peters* (1923), 179 Wis. 587, 588, 191 N. W. 973. An injunction ordinarily is the appropriate remedy to restrain the breach of an express negative contract and in some instances a negative covenant may be implied and its breach enjoined. The test is not in the form of the language used but in the quality of the acts required. 43 C. J. S., Injunctions, p. 550, sec. 80 b.

The present contract requires the licensee, operating as a furnisher of Culligan Plan service, to purchase all his service requirements of equipment and materials from Culligan. The negative, that he will not purchase them elsewhere, is clearly implied and in a proper case and within the sound discretion of the trial court, the breach of that implied negative contract may be enjoined.

As Culligan licensees, Rheaume and Soft Water Service, Inc., had agreed to purchase all their service requirements from Culligan. Buying them from Rheaume's Supply Company is an obvious breach of that undertaking and we consider the trial court was well within its discretionary power in prohibiting such purchases by Soft Water Service, Inc., *pendente lite*.

The injunction prohibited Rheaume and Soft Water Service, Inc., from selling to others than their soft-water-service customers materials and equipment which those defendants had originally bought from Culligan. The trial court might well consider that the furnishing or procurement of equipment or materials required by a water-softening-service business is "a phase" of such business and therefore an activity which Rheaume and his Soft Water Service, Inc., had covenanted not to engage in, directly or indirectly. For them to engage in it is conduct which we consider might be enjoined temporarily by the trial court without an abuse of discretion.

In so far as the Soft Water Supply Company supplies the operators of soft-water services with their requirements, the trial court did not abuse discretion in considering that it was engaged in a phase of the water-softening-service business, as we have already said, and Rheaume, who had organized the corporation for that very purpose was thus, indirectly and through a corporation, engaged in that phase, contrary to his express promise contained in his license agreement. The trial court did not exceed discretionary limits by enjoining such conduct on the part of Rheaume and his agency, the Soft Water Supply Company. We find nothing in the record, however, which shows that Granger ever made any such agreement with Culligan. In so far as he sells on behalf of the Soft Water Supply Company, of course the injunction rightly includes him, but we think that the injunction restraining him in his individual dealings lacks support in the record and it was an abuse of discretion to grant that part of it.

The defendants submit that the terms of such licenses as Culligan has with its numerous licensees, to whom the defendants are restrained from making sales, are material because such terms may promote monopoly to the point of being illegal agreements in restraint of trade. The court reserved consideration of that question for the trial on the merits and defendants contend that, until this matter of defense is heard and determined adversely to the defendants, the court errs in granting the injunction. In like manner, defendants say that the injunction interferes with interstate commerce and, because the trial court deferred a decision on that point until the case could be heard on the merits, and nevertheless granted the injunction, the error was repeated. In so contending, defendants rely largely on *Mogen David Wine Corp. v. Borenstein* (1954), 267 Wis. 503, 66 N. W. (2d) 157 interpreting the opinion there as follows:

"Where an issue of law is raised by the defendant, it is discretionary with the trial court whether to pass on the question of law at the time of the application for temporary injunction or to defer so doing until the trial on the merits.

"*Mogen David Wine Corp. v. Borenstein,* 267 Wis. 503.

"As we interpret the language of the court in the case of *Mogen David Wine Corp. v. Borenstein,* 267 Wis. 503, the trial court may pass on the questions of law raised and grant the temporary injunction if the questions of law are decided adversely to the defendant or he may deny the request for temporary injunction and pass on the legal questions at the time of the trial, when the case is tried on the merits but the trial court may not, as the trial court did in this case, refuse to consider the legal defenses raised and grant the temporary injunction."

We disagree with defendants' construction of our *Mogen David Wine Corp.* opinion. There we had the reverse of the present situation, in that the temporary injunction was denied and we upheld the denial as not being an abuse of discretion. We consider that generally it is the better practice, when legal or equitable defenses are raised which appear meritorious to the trial court, to deny the application for the temporary injunction until such issues can be disposed of, but we did not intend to say that the court which grants a temporary injunction without first resolving such legal questions has thereby abused its discretion. The circumstances of each case must determine that. This is particularly true in the present case for the learned trial court did not grant this injunction because of the contract relationship between Culligan and those other licensees to whom Rheaume and his Soft Water Supply Company were selling supplies. The written decision filed by the trial court makes clear that it was the contract between Rheaume and the Soft Water Supply Company on the one hand and Culligan on the other on which the court's decision turned, and it was the violation of *their* agreement which impelled the court to issue the injunction. What may be

contained in the various licenses of third persons does not touch this point and the trial court did not abuse discretion in postponing decision on it until trial could be had on the merits.

Defendants urge that the injunction which keeps them from selling certain merchandise to buyers in other states creates an illegal burden on interstate commerce, contrary to the commerce clause of the constitution of the United States. If there is a burden it grows out of defendants' contract to refrain from all phases of the water-softening-service business except the actual servicing of water softeners under the Culligan Plan. That contract obviously was not entered into with the design of impeding interstate commerce. If, *pro tem,* the defendant licensees are required to observe its terms the incidental effect which such observance may have on their commerce with out-of-state customers does not violate the constitution's interstate-commerce clause. Much the same argument was made in *State v. Golden Guernsey Dairy Cooperative* (1950), 257 Wis. 254, 266, 43 N. W. (2d) 31, when a defendant protested its ouster from the state on the same ground. Relying on *Standard Oil Co. v. Missouri* (1912), 224 U. S. 270, 32 Sup. Ct. 406, 56 L. Ed. 760, we held then that the state was not prevented by such a consideration from enforcing obedience to its laws. We consider that the power of the court to restrain temporarily a breach of contract is not wiped out by the fact that the promisor trades across a state line.

Defendants submit that plaintiff has insufficiently shown that irreparable damage will accrue if they are not restrained. We think the proof sufficient to sustain the discretionary power of the court. The record shows that Culligan's business reputation is an asset of great value and that materials sold by Rheaume and the Soft Water Supply Company to Culligan dealers were inferior and defective. Such materials used by licensees who supply Culligan service could not but

affect adversely, and even destroy, the reputation on which Culligan's business success depends.

We call attention to the fact that this injunction was issued upon consideration by the court of pleadings and affidavits, as the court is empowered by sec. 268.02 (1), Stats., to do. It is quite possible that allegations which seem reasonably persuasive to the trial court at that early stage may appear less so when trial is had on the merits. The court required plaintiff to file a bond of $100,000 for defendants' protection if the temporary injunction should later prove to have been improvidently granted. The question is not whether we would have granted the injunction if we had been in the learned trial judge's place, but whether the grant was an abuse of his discretion. We conclude that it was not, except for the part restraining defendant Granger already alluded to.

*By the Court.*—Order modified by striking from the first sentence of the injunction the name of William W. Granger and, as so modified, affirmed.