CODEPT, INC., Appellant, v. MORE-WAY NORTH CORPORA-
TION and another, Respondents.

*March 2—March 31, 1964.*

For the appellant there was a brief by *M. J. Levin,* attorney, and *James S. Levin* of counsel, both of Milwaukee, and oral argument by *James S. Levin.*

For the respondents there was a brief by *Lyman A. Precourt, David H. Fleck,* and *Foley, Sammond & Lardner,* all of Milwaukee, and oral argument by *Mr. Precourt.*

DIETERICH, J.  More-Way operates a discount department store in Milwaukee, Wisconsin. On May 26, 1960, More-Way as licensor and one David Gold as licensee entered into a "license agreement," the pertinent portions of which are as follows:

"Whereas, licensee desires to exclusively operate in said building a department devoted solely to the sale, at retail, of merchandise classified as cosmetics, toiletries, stationery and school supplies, notions, health aids, beauty aids, sun glasses, gift wrap and gift ties (excluding, however, any and all Christmas gift wrap and ties) and candies, and paper goods and sundries, hereinafter called 'department goods;' and . . .

"Whereas, the parties recognize that the success of licensor will be effected by licensee's observance of such merchandising policies, standards and practices as licensor shall formulate from time to time and that any deviation therefrom by licensee will adversely affect the operators of all other departments in said building and expose them to the risk of damage and injury;

"Now, therefore, in consideration of the premises, licensor hereby grants licensee a license to exclusively operate such a department in said building during the term hereof, . . . subject to and upon the following covenants and conditions, to wit:

"1. The term shall be for 3 years, . . .

"6. Licensee agrees at its own cost and expense to conduct a first-class, up-to-date department . . . to stock the same continually with a complete line and saleable inventory of current department goods in suitable price ranges, to display its goods attractively . . . to offer its department goods at prices which are at all times competitive with the prices at which such goods are offered for retail sale elsewhere in the Greater Milwaukee Area, to conduct sales thereof only when and in such manner as licensor shall approve, . . .

"As an addendum to paragraph 1, the parties agree that the term of this license shall be extended for a further term of 5 years, provided however, that the licensee herein has gross sales of $400,000 for the 12 calendar months next preceding the time which said licensee shall exercise his notice of option; and further, that said notice shall be given by the licensee to the licensor not less than 60 days before the expiration of the original term."

Gold assigned the license to Codept on June 7, 1960, and the validity of the assignment is not questioned. Gold is the president of Codept, Inc.

Codept, Inc., commenced the action by service of a summons on August 8, 1962, approximately nine months before the expiration of the primary three-year term of the license agreement. Codept's complaint was not served until April 25, 1963, approximately one month prior to expiration of the

primary term, and alleged that the agreement granted Codept an exclusive license to sell certain items on the store premises for three years; that More-Way breached the agreement by allowing other departments in the store to stock and sell the items exclusively reserved for sale by Codept; that such acts had the effect of reducing Codept's sales and thereby preventing Codept from fulfilling the condition precedent to the exercise of the option to extend the license for an additional term of five years. The complaint further alleged that More-Way's acts injured Codept's business, and diminished its income—all to its damage in the sum of $150,000. Codept prayed for judgment ordering More-Way to extend the term of the agreement for an additional five years, and permanently enjoining More-Way from doing any acts contrary to the terms of the agreement. The complaint also asked for an additional $50,000 as punitive and exemplary damages against respondent, Morry A. Silberman, president of More-Way.

More-Way's answer denied that it had breached the license agreement; alleged that Codept's failure to earn the $400,000 required for exercise of the option was not excusable; and alleged that the agreement did not give Codept the exclusive right to sell certain items, but only the exclusive right to deal in the entire general category of goods. More-Way counterclaimed against Codept, claiming that Codept breached the license agreement in that it failed to conduct an up-to-date department; failed to keep the department open during the times designated by More-Way; failed to stock the department with a complete line of goods; failed to display the goods attractively; and failed to offer the goods at competitive prices. More-Way's counterclaim prayed for judgment dismissing the complaint and for damages on the counterclaim in the sum of $300,000.

Prior to expiration of the primary three-year term, Codept moved the trial court for injunction temporarily restraining

More-Way from interfering with the operation and conduct of Codept's business, and from instituting any proceedings to evict Codept from the store premises. David Gold stated in an affidavit in support of the motion for temporary injunction that Codept's gross sales for the twelve-month period ending March 31, 1963, were $256,526; that based upon his experience as a merchandiser and his knowledge of More-Way's operations, the gross sales by other departments of merchandise reserved to Codept for exclusive sale during the same period amounted to approximately $250,000; and that but for such wrongful sale by other departments, Codept would have been able to comply with the condition precedent to the exercise of the option. Gold's affidavit also stated that on March 12, 1963, Codept gave notice to More-Way that it was exercising the option; that it had fully complied with the text, spirit, and intent of the license agreement, and that More-Way refused to grant the option.

Respondent Silberman filed an affidavit in opposition to Codept's motion in which he stated that Gold, the original licensee, inspected the store prior to signing the agreement and was aware of the various items sold by other departments; that Codept had breached the terms of the agreement relating to maintenance of a complete line of goods, maintenance of competitive price scales, and that Codept has never had annual gross sales of $400,000. Attached to Silberman's affidavit are several letters to Codept, written on several different dates, and advising Codept that it was stocking, displaying, and pricing goods in a manner contrary to the terms of the licensing agreement.

The trial court denied Codept's motion for a temporary injunction by its order dated May 10, 1963. The trial court, in its memorandum decision, stated that it was not making any determination of the merits of the action, but was only deciding the question of whether a temporary injunction was necessary in order to maintain the *status quo*.

The date of expiration of the primary term of the license (May 31, 1963) passed, and Codept remained on the premises. More-Way commenced an unlawful detainer action in the county court of Milwaukee county on June 3, 1963, which was dismissed on the ground that unlawful detainer does not lie where the relationship of licensor-licensee, rather than the relationship of landlord and tenant, exists.

More-Way then moved the trial court for leave to amend its answer and counterclaim, and for a temporary injunction enjoining Codept from occupying any portion of the store premises during the pendency of the action. Morry Silberman stated in an affidavit in support of the motion that More-Way had negotiated an agreement with another party for operation of the department, and that Codept was in substantial default in the performance of its obligations under the license agreement. Codept moved to dismiss More-Way's motion for a temporary injunction, and submitted affidavits relating to the manner in which Codept was stocking its department. Codept also offered to continue paying the $1,000 per month rental during the pendency of the action.

The trial court denied Codept's motion to dismiss and granted More-Way's motions, and on July 2, 1963, entered an order temporarily enjoining Codept from occupying any portion of the store premises, and requiring More-Way to post a bond to secure payment of any damages caused to Codept by the temporary injunction, not to exceed $10,000. The trial court in its oral decision from the bench stated that the denial of Codept's motion for a temporary injunction on May 10, 1963, was intended to have the effect of retaining the *status quo* until May 31st, the date the primary term of the license agreement expired, and then have compliance with the agreement to vacate and move out at that time. The temporary injunction provided for in the order of July 2d was made effective on July 15, 1963, one and one-half

months after the May 31st deadline. Execution of this order was stayed pending the appeal to this court, with a provision that Codept continue to pay the $1,000 per month rental.

Codept has appealed from the whole of the order of May 10, 1963, denying its motion for temporary injunction; and from the whole of the order of July 2, 1963, granting More-Way's motion for a temporary injunction.

It is an elementary rule of law that the granting or refusal of a temporary injunction is a matter lying within the discretion of the trial court, and its determination in regard thereto will not be upset on appeal unless an abuse of discretion is shown. *Fassbender v. Peters* (1923), 179 Wis. 587, 588, 191 N. W. 973; *Culligan, Inc., v. Rheaume* (1955), 269 Wis. 242, 248, 68 N. W. (2d) 810. The merits of the case are not before this court on the instant appeal; the only question is whether the trial court abused its discretion. *Bartell Broadcasters v. Milwaukee Broadcasting Co.* (1961), 13 Wis. (2d) 165, 171, 108 N. W. (2d) 129.

Codept, Inc., contends that the trial court's order of May 10, 1963, which denied its motion for a temporary injunction to restrain More-Way from instituting proceedings to remove Codept from the premises constituted an abuse of discretion. Sec. 268.02 (1), Stats., sets forth the reasons for which a temporary injunction may be granted:

"(1) When it appears from his pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure him, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act."

Codept argues in support of its contention that under the terms of the agreement, it has the exclusive right to sell

specific merchandise. This claim is controverted by More-Way, and its validity should be determined upon a trial of all the facts—not upon affidavits submitted pursuant to a preliminary motion. Similarly, the effect of granting the motion for temporary injunction would be to allow Codept to occupy the store premises after expiration of the license agreement. Under the terms of the agreement, Codept would be entitled to remain after the expiration date only if it complied with the condition precedent to exercise of the option (*e.g.,* a showing of gross sales of $400,000 in the preceding twelve-month period)—and it is conceded that they did not meet this condition. Codept's contention that its failure to meet the requisite gross-sales figure was excusable is in reality the ultimate question to be decided in the case, and this question should be determined at the trial, not upon affidavits. This court has stated on several occasions that where the issuance of a temporary injunction would have the effect of granting all the relief that could be obtained by a final decree, and would practically dispose of the whole case, it ordinarily will not be granted unless the complainant's right to relief is clear. See *Vredenburg v. Safety Devices Corp.* (1955), 270 Wis. 36, 39, 70 N. W. (2d) 226, *Bartell Broadcasters v. Milwaukee Broadcasting Co., supra,* page 172.

Codept also claims that the trial court erred in finding that Codept had an adequate remedy at law. The argument on this point is that Codept has gone to great expense in equipping and developing its department, and in creating goodwill [1] —all of which will be lost forever if it is not

---

[1] As to the item of goodwill, it is difficult to see how Codept could have any "goodwill" in the operation of its department in the More-Way store. The contract provides that all sales slips, price markings, wrappings, etc., are to be furnished by More-Way, presumably with the More-Way name imprinted thereon, and although the affidavits do not so reveal, we take judicial notice of the fact that the general public is not aware of the fact that the various departments in the store are operated by licensees.

allowed to remain during the pendency of the action. We determine, however, that the damages, if any, likely to be suffered by Codept are readily ascertainable by reference to the records of its outlay in setting up the department and to the records of its past sales.

Under the facts presented by the record in the instant action, the trial court did not abuse its discretion in denying Codept's motion for a temporary injunction, and therefore the order of May 10, 1963, is affirmed.

Codept, Inc., contends that the trial court's order of July 2, 1963, granting injunctional relief to More-Way constitutes an abuse of discretion in that it has the effect of requiring them to move out, and thus upsets the *status quo*. The function of a temporary injunction is to maintain the *status quo,* not to change the position of the parties or compel the doing of acts which constitute all or part of the ultimate relief sought. *State ex rel. Attorney General v. Manske* (1939), 231 Wis. 16, 21, 285 N. W. 378; *Mogen David Wine Corp. v. Borenstein* (1954), 267 Wis. 503, 509, 66 N. W. (2d) 157. The license agreement expired on May 31, 1963, and was only renewable for an additional five years if certain requirements were met—among them the requirement that Codept show $400,000 in gross sales for the preceding twelve-month period, and it is undisputed that Codept's sales did not meet this figure. On the face of the contract, therefore, Codept was no longer in legal occupancy of the store premises after May 31, 1963, and the granting of the temporary injunction preserved, rather than upset, the *status quo*.

Codept also contends that where right of possession is in dispute between two parties, one of whom is in actual possession under color of right, a temporary injunction will not lie to transfer possession to the other party, citing *Lipinski v. Lipinski* (1952), 261 Wis. 327, 329, 52 N. W. (2d) 922. The *Lipinski Case* is distinguishable, however, for there the complaint, while appearing to state a cause of action for

ejectment, sought relief by way of a permanent injunction. The trial court dismissed the complaint on the grounds that relief by injunction was not a proper remedy. This court reversed, with directions to reinstate the cause for trial as an action in ejectment. Relief by injunction was held to be improper not because the defendant was in possession under color of right, but rather because the ultimate question to be determined was the plaintiff's title to the land, and this court stated that "the court will not ordinarily restrain a mere trespass, and, under the guise of so doing, try title to land, thus converting a bill in equity into an action in ejectment." Also, in the *Lipinski Case,* the ultimate relief sought in the action was a permanent injunction, whereas the parties in the instant action were seeking temporary injunctions for the sole purpose of preserving the *status quo* during the pendency of the litigation.

We determine that the trial court did not abuse its discretion in granting More-Way's motion for a temporary injunction by the order dated July 2, 1963.

The orders of the circuit court dated May 10, 1963, and July 2, 1963, are affirmed.

*By the Court.*—Orders affirmed.