BROWNE, and others, Plaintiffs-Appellants, v. MILWAU-KEE BOARD OF SCHOOL DIRECTORS, and others, Defendants-Respondents.†

*No. 77–318. Argued February 6, 1978.—Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 559.)

† Motion for rehearing denied, without costs, on June 30, 1978.

318

For the appellants there were briefs by *Willis B. Frebee*, of Milwaukee, and *Raymond J. LaJeunesse, Jr.*, of National Right to Work Legal Defense Foundation, Inc., Fairfax, Virginia, and oral argument by *Mr. LaJeunesse*.

There was a brief by *John H. Bowers, John C. Carlson* and *Lawton & Cates*, and oral argument by *Mr. Bowers*, all of Madison, for District Council 48 and Local 1053, Affiliated with District Council 48, American Federation of State, County and Municipal Employees, AFL–CIO, and their officers; joined by *James B. Brennan*, city attorney, and *Patrick B. McDonnell*, assistant city attorney, for Milwaukee Board of School Directors; *Zubrensky, Padden, Graf & Bratt*, attorneys, of Milwaukee, and of counsel *Zwerdling & Mauer* and *A. L. Zwerdling*, general counsel, of Washington, D. C., for American Federation of State, County and Municipal Employees, AFL–CIO.

Brief amicus curiae for Milwaukee Teachers Education Association was filed by *Richard Perry* and *Perry & First, S. C.* of Milwaukee.

DAY, J. This is an appeal from two parts of an order of the Milwaukee Circuit Court. The first part of the order referred the case to the Wisconsin Employment Relations Commission (hereafter W.E.R.C.). W.E.R.C. was to determine what share of the plaintiff-appellant non-union municipal workers' (hereafter plaintiffs) fair-share dues were being spent for statutorily impermissible purposes. Fair-share dues are the amount of money deducted from the pay of non-union public employees pursuant to agreements between the employer and the union under sec. 111.70(1)(h), Stats. (1975), *infra*. According to the statute these deductions are to be used to cover the cost of contract administration and collective barganing.

The second part of the order denied the plaintiffs' motion to escrow all fair-share deductions of all objecting fair share employees within defendant union, Local 1053, American Federation of State, County and Municipal Employees, AFL-CIO.[1]

*Statutes Involved.*

Sec. 111.70(1)(h), Stats. (1975) provides that,

" 'Fair-share agreement' means an agreement between a municipal employer and a labor organization under which all or any of the employees in the collective bargaining unit are required to pay their proportionate share of the cost of the collective bargaining process and contract administration measured by the amount of dues uniformly required of all members. Such an agreement

---

[1] The American Federation of State, County and Municipal Employees (hereafter A.F.S.C.M.E.), District Council 48 of A.F.S.C.M.E., Emil Muelver, director of District Council 48, Adrienne Nichols, president of Local 1053 and Patricia Kline, Treasurer of Local 1053 were all named as defendants. All defendants other than the Milwaukee Board of School Directors are hereafter collectively referred to as the unions or defendant unions.

shall contain a provision requiring the employer to deduct the amount of dues as certified by the labor organization from the earnings of the employees affected by said agreement and to pay the amount so deducted to the labor organization."

"Sec. 111.70(2), Stats. (1975) provides that,

"Municipal employees shall have the right to self-organization, and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, and such employees shall have the right to refrain from any and all such activities except that employees may be required to pay dues in the manner provided in a fair-share agreement."

Sec. 111.70(3), Stats. (1975) provides in pertinent part:

". . . (a) It is a prohibited practice for a municipal employer individually or in concert with others:

"1. To interfere with, restrain or coerce municipal employes in the exercise of their rights guaranteed in sub. (2). . . ."

The issues on this appeal are as follows:

1. Was the order referring this case to W.E.R.C. appealable?

2. Did the trial court abuse its discretion by referring this case to W.E.R.C. to determine what portion of the plaintiffs' fair-share funds were being used for purposes unrelated to collective bargaining or contract administration?

3. Did the trial court abuse its discretion by refusing to escrow all fair-share deductions pending W.E.R.C.'s determination?

We hold that the order was appealable and that the trial court did not abuse its discretion in transferring the case or refusing to escrow the fair-share funds.

*Factual And Procedural Background.*

The plaintiffs are fourteen non-union employees of the defendant Milwaukee Board of School Directors (hereafter board). On June 4, 1973 the plaintiffs brought suit in Milwaukee circuit court on behalf of themselves and similarly situated non-union employees. The complaint challenged, on a number of grounds, the facial and as applied constitutionality of secs. 111.70(1)(h) and 111.70(2), Stats. (1975), *supra,* authorizing compulsory fair-share agreements between the board and Local 1053. The complaint sought declaratory and injunctive relief and damages.

On August 15, 1973, the defendant unions demurred to the complaint on the grounds, *inter alia,* that the circuit court lacked jurisdiction over the subject matter because W.E.R.C. had exclusive jurisdiction and that the non-union employees had failed to allege exhaustion of administrative and contract remedies. The circuit court overruled the demurrer on all grounds on October 9, 1973. That order was subsequently affirmed by this court upon the unions' appeal. *Browne v. Milwaukee Bd. of School Directors,* 69 Wis.2d 169, 230 N.W.2d 704 (1975). This court upheld the circuit court's overruling of the demurrer on the issues of exclusive jurisdiction in W.E.R.C. and failure to allege exhaustion of administrative remedies.

On March 10, 1976 this case was consolidated with the Milwaukee circuit court case of *Gillis W. Gerleman, et al., vs. The Milwaukee Board of School Directors et al.* The Gerleman case involved the same issues as this case, but there the plaintiffs were non-union teachers. In this case the plaintiffs are non-union clerical, secretarial and technical employees.

On remand after the first appeal the plaintiffs moved, on November 23, 1976, for partial summary judgment.[2] In a May 16, 1977 opinion and orders entered June 29, 1977 and August 22, 1977, the trial court denied the plaintiffs' motion for partial summary judgment and granted partial summary judgment for the unions as to the facial constitutionality of secs. 111.70(1)(h) and 111.70(2), Stats. The circuit court held that on their face the statutes authorizing the compelled exaction of "fair-share" funds did not violate freedom of speech, equal protection or due process of law guaranteed by the first and fourteenth amendments to the United States Constitution and similar provisions of the Wisconsin Constitution.

The trial court's holding of facial constitutionality was based on its interpretation that "by the statute the non-union monies are to be utilized only for '. . . their proportionate share of the cost of the collective bargaining process and contract administration. . . .'" Recognizing that "the uncontroverted affidavits relate numerous expenses unrelated to the confines of the statute," the court further held that "a strict accounting procedure should be instituted, if same has not already been accomplished, to ensure that any objecting non-member is reimbursed for any of his dues which are not strictly related to the collective bargaining process or contract administration" and placed "the burden . . . on defendants to show valid expenditures . . . ."

The trial court felt that this fact finding process could be more expeditiously accomplished by W.E.R.C. and suggested, in its opinion, that a motion be brought to

[2] In *Gerleman*, the defendant Milwaukee Teacher's Education Association Union also moved for partial summary judgment (Amicus brief p. 3). According to the record the defendant unions in *Browne* did not move for summary judgment.

accomplish this end. The unions subsequently made such a motion and on August 22, 1977 the trial court entered an order referring the case to W.E.R.C.

". . . to have that agency make its findings of fact and conclusions of law with respect to the practices and statutory rights of [the] parties under sec. 111.70, Stats."[3]

On August 8, 1977 the plaintiffs filed a motion to escrow all fair-share deductions pending a determination of the validity of those deductions. The motion was denied in the same order that referred the case to W.E.R.C. The plaintiffs appealed from the order referring the case to W.E.R.C. and from the denial of temporary escrow relief.[4]

On October 12, 1977 the plaintiffs petitioned this court for a writ of mandamus requiring the trial court to vacate its order of referral to W.E.R.C. and exercise jurisdiction in the case. On November 16, 1977 this court entered an order holding the mandamus petition in abeyance, pending the disposition of this appeal.

On January 5, 1978 the defendant unions filed a motion to dismiss the appeal for want of jurisdiction in this court. On February 1, 1978 this court denied the motion to dismiss the appeal from the order denying the motion to escrow. The decision on the appealability of the order to transfer the case to W.E.R.C. was held in abeyance until disposition of the merits of the appeal.

---

[3] The trial court also ordered,
"that while this court retains jurisdiction of this action for purposes of review of the proceedings before the Wisconsin Employment Relations Commission, it does so in accordance with the criteria and procedure set forth in Chapter 227, Wis. Stats."

[4] The plaintiffs also originally appealed from the order denying their motion for summary judgment. The plaintiffs have since abandoned that appeal.

### Appealability Of The Order Of Referral To W.E.R.C.

The defendant unions contend that the order referring the case to W.E.R.C. is not an appealable order. Sec. 817.33(3)(a), Stats. (1975) provides that an order is appealable when it, "grants, refuses, continues or modifies a provisional remedy. . . ."

In *Snajder v. State*, 74 Wis.2d 303, 246 N.W.2d 665 (1976), Snajder sought certiorari review of his parole revocation. The circuit court found that the evidence before the court was insufficient to review the propriety of the revocation decision and remanded the case to the Department of Health and Social Services for further explanation and the taking of more evidence. On appeal this court ruled that the order remanding the case to the department was appealable as a provisional remedy because it was a ". . . remedy outside of and beyond those ordinary proceedings in an action which relate merely to matters of practice and procedure."[5]

In this case the order of referral to W.E.R.C. is also appealable as a provisional remedy because it is "outside of and beyond those ordinary proceedings in an action." The plaintiffs sought injunctive and declaratory relief and damages in the Milwaukee Circuit Court on the grounds that their fair-share funds were being spent for an impermissible purpose. The referral to W.E.R.C. was not within the ordinary proceedings in such an action.

### Referral To W.E.R.C.

The trial court order transferred this case to W.E.R.C. for the purpose of making findings of fact and conclu-

[5] *Noonan v. Orton*, 28 Wis. 386, 387 (1871).

sions of law to determine how much of the plaintiffs' fair-share contributions have been used for purposes unrelated to collective bargaining or contract administration. In making the referral the trial court relied on the doctrine of primary jurisdiction.

Where primary jurisdiction is at issue

". . . a trial court can, in its discretion, either hear a case or defer to the expertise of an administrative agency . . . the question of primary jurisdiction arises only in cases where there is concurrent jurisdiction in the administrative agency and in the courts. Accordingly, the question is not one of subject matter jurisdiction, but which portion of the dispute-settling apparatus—the courts or the agencies—should, in the interests of judicial administration, first take the jurisdiction that both the agency and the court have." *Browne v. Milwaukee Bd. Of School Directors,* 69 Wis.2d 169, 175, 230 N.W.2d 704 (1975).

Where questions of primary jurisdiction are involved and the court declines to exercise its jurisdiction, the question on review is whether the court has abused its discretion. *Sawejka v. Morgan,* 56 Wis.2d 70, 79, 201 N.W.2d 528 (1972).

The question of primary jurisdiction was first considered in Wisconsin in the case of *Wisconsin Collectors Asso. Inc. v. Thorp Finance Corp.,* 32 Wis.2d 36, 145 N.W.2d 33 (1966). In that case the collectors claimed that Thorp was engaged in running a collection agency without having complied with the statutory licensing requirements. The trial began and immediately after the first witness was sworn, Thorp made a motion ". . . in the nature of a demurrer *ore tenus*," claiming that the court had no jurisdiction because the collectors' association had not exhausted its administrative remedies. The trial court reserved decision on the demurrer and pro-

ceeded to take 830 pages of testimony. At the conclusion of the trial, Thorp moved for dismissal on the ground that the Commissioner of Banks had primary jurisdiction and had failed to exercise it. At this point, the trial court determined that the Commissioner did have primary jurisdiction and transferred the case to that office for a fresh start.

In determining who should have heard the case this court stated,

"Nonetheless, we believe it improper to couch such priority in terms of power or jurisdiction. The standard, in our opinion, should not be power but comity. The court must consider which course would best serve the ends of justice. If the issue presented to the court involves exclusively factual issues within the peculiar expertise of the commission, the obviously better course would be to decline jurisdiction and to refer the matter to the agency. On the other hand, if statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. The trial court should exercise its discretion with an understanding that the legislature has created the agency in order to afford a systematic method of fact-finding and policy-making and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention." *Wisconsin Collectors, supra* at 32 Wis.2d 44, 45.

In *Wisconsin Collectors* this court held that it would not have been an abuse of discretion to transfer the case to the agency at the beginning of trial, but that it was an abuse to do so after such an extensive hearing.

To determine whether this trial court abused its discretion in transferring the case to W.E.R.C., it must first be determined what the trial court decided in granting the previous motion for partial summary judgment. The issues remaining unresolved after that decision must

be mainly factual, rather than legal or constitutional. If not, the transfer was erroneous. The trial court first determined that secs. 111.70 (1) (h) and 111.70 (2), Stats. (1975) are constitutional on their face.[6]

Concerning the application of the statute the court stated,

"Further the uncontroverted affidavits relate numerous expenses unrelated to the confines of the statute. Thus there may be an unconstitutional application of the funds collected.

"Since all the defendant unions receive a portion of plaintiffs' funds (albeit slight in the case of the state and national organizations) a strict accounting procedure should be instituted, if same has not already been accomplished, to ensure that any objecting nonmember is reimbursed for any of his dues which are not strictly related to the collective bargaining process or contract administration . . . ."

"Perhaps it may prove less burdensome to rebate all 'per capita' dues to the regional, state and national organizations but that is defendants' option. If not so exercised defendants must show what proportion of those 'per capita' assessments come within the statutory confines and which do not."

The plaintiffs contend that the trial court decision still leaves open questions about whether the statute is being constitutionally applied to them, but at a June 29, 1977 hearing after the opinion was issued the trial court stated that,

"Although the Court declared the Wisconsin Statute constitutional on its face, a further constitutional issue would normally be apparent in this case on First Amendment rights, but that issue really is moot since the

---

[6] Soon after the trial court made its decision, the United States Supreme Court reached the same conclusion concerning a similar Michigan statute in *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S. Ct. 1782 (1977). The plaintiffs do not challenge this part of the trial court's decision.

statute itself indicates the expenditures by the unions of fair-share monies are limited to contract administration and collective bargaining, which gives greater rights to the plaintiffs than solely First Amendment rights."

At an August 22, 1977 hearing the trial court referred to its previous decision and stated that,

"There is no question that the issue before the Court in the May 16th decision was solely the question of whether or not that portion of the statutes was unconstitutional on its face. The Court did make referral in its opinion to certain expenditures that would be placed in the record by the plaintiffs concerning a number of different expenditures in both the *Browne* and *Gerleman* cases, and only for purposes of guidance for any agency or referee that will be adopted when it makes its determination on findings of fact and conclusions of law *as to whether or not the expenditures come within the statute, which, as I have indicated on a number of occasions, is more restrictive of the union's rights than the plaintiffs' First Amendment rights.*" (emphasis added).

Based on the above statements the trial court must have determined that the issue of the "as-applied" constitutionality of the statute was foreclosed by the statute itself. Sec. 111.70(1)(h), Stats. (1975), provides that fair-share employees are required to pay the costs of collective bargaining and contract administration. The trial court evidently reasoned that these costs determine the largest amount due from non-union employes and not the ". . . amount of dues uniformly required of all [union] members." Sec. 111.70(2), Stats., *supra.* Under this paragraph issues of constitutional application of the statute are settled because the statute is interpreted so that only money for constitutional purposes can be collected under it.

This approach complies with the rule that when,

". . . a legislative enactment . . . is attacked as being unconstitutional . . . the cardinal rule of statutory construction is to preserve a statute and to find it constitutional if it is at all possible to do so." *Gottlieb v. Milwaukee*, 33 Wis.2d 408, 147 N.W.2d 633 (1967).

" '. . . the duty of this court is . . . if possible, to so construe the statute as to find it in harmony with accepted constitutional principles.' " *State ex rel. Harvey v. Morgan*, 30 Wis.2d 1, 13, 139 N.W.2d 585 (1966).

We agree with the trial court's interpretation of sec. 111.70(2), Stats. The statute itself forbids the use of fair-share funds for purposes unrelated to collective bargaining or contract administration.[7]

[9]

In applying the doctrine of primary jurisdiction to the unresolved facts and issues of this case the trial court did not abuse its discretion in transferring the case to W.E.R.C. Sec. 111.70(1)(h), Stats. is constitutional on its face, and by its terms the statute can not require

---

[7] The trial court's approach is also similar to the one used by the U. S. Supreme Court in *International Ass'n of Machinists v. Street*, 367 U.S. 740, 81 S. Ct. 1784, 6 L. Ed.2d 1141 (1961). That case involved a constitutional challenge to a union shop provision applicable to the Railway Labor Act. The record contained findings that the union treasury, to which all members were required to contribute, had been used to finance political campaigns and propagate political and economic ideologies.

The court stated that these findings raised grave constitutional questions. In resolving these questions the court made an exhaustive review of the legislative history of the Railway Labor Act and determined that only expenditures for negotiating and administering the collective bargaining agreement and adjusting grievances fell within, "the reasons . . . accepted by Congress why authority to make union shop agreements was justified." *Street, supra* at 367 U.S. 768. The Court therefore ruled that the use of compulsory union dues for political purposes violated the purpose of the act and it,

". . . is to be construed to deny the unions, over an employee's objection, the power to use his exacted funds to support political causes which he opposes." *Street, supra* at 367 U.S. 768, 769.

the plaintiffs to contribute to political purposes in violation of their first amendment rights. The trial court correctly determined that the remaining issues involved factual issues and statutory application: What portion of the fair-share dues are being used for purposes unrelated to contract administration or collective bargaining, in contravention of the statute.[8]

The plaintiffs raise a number of arguments to show that the referral to W.E.R.C. was erroneous. Their most significant argument is that this case does not involve an issue of primary jurisdiction because the agency did not have jurisdiction to resolve the constitutional issues raised here. Based on the previous discussion, constitutional issues are no longer apparent in this case. Nonetheless, there must be some basis for W.E.R.C. jurisdiction over the remaining issue of statutory violations or a primary jurisdiction analysis is inapplicable. An agency or board created by the legislature only has those powers which are expressly or impliedly conferred on it by statute. Such statutes are generally strictly construed to preclude the exercise of power which is not expressly granted. *Racine Fire & Police Comm. v. Stanfield,* 70 Wis.2d 395, 399, 234 N.W.2d 307 (1974).

In *City Firefighters Union v. Madison,* 48 Wis.2d 262, 179 N.W.2d 800 (1970), the procedural issue was

---

[8] Portions of the trial court decision and later comments at subsequent hearings refer to its retaining jurisdiction of this case for later review of W.E.R.C.'s determination under ch. 227. W.E.R.C.'s fact-finding in this case is open to review under ch. 227, but the trial court can not retain jurisdiction when it transferred the case to W.E.R.C. Under the primary jurisdiction theory the trial court has deferred to the expertise of the administrative agency. It has not ordered W.E.R.C. to act as a referee because W.E.R.C. is part of the executive branch and to do so would contravene the separation of powers principle articulated in sec. 15.01, Stats. (1975). Review of W.E.R.C.'s determination may coincidentally be carried out by the same circuit court, but the court can not order that result.

whether the circuit court had jurisdiction to decide whether certain firemen could hold union office in contravention of the fire chief's order. This court reasoned that the issue was the same as in *Thorp, supra,* (primary jurisdiction) because the circuit court was being asked to hear a dispute that could also have been presented to an administrative agency. The appealing union argued that W.E.R.C. could not have heard the dispute.

"Appellants . . . argue that they did not have a choice of forums between WERC and the circuit court. They argue that the Chief's acts constitute a breach of contract and that nowhere in sec. 111.70, Stats., is WERC given authority to hear a breach of contract action.
"This is true, but the very same acts, if proven, would also have served as a basis of a 'prohibited practice' action which WERC is clearly empowered to hear. Thus, appellants did have a choice of forums, depending upon what label they selected for their action." *City Firefighters, supra* at 48 Wis.2d 268, 269.

Sec. 111.70(3)(a)1, Stats. (1975), *supra,* provides that it is a prohibited practice for a municipal employer, "To interfere with, restrain or coerce municipal employees in the exercise of their rights guaranteed . . ." Under Sec. 111.70(2), Stats., *supra,* we interpret the latter statute as only requiring that non-union employees pay fair-share dues for the expense of contract administration and collective bargaining. The plaintiffs are claiming that their fair-share dues have been used for political purposes, in contravention of the statute. That use of the fair-share funds interferes with their statutory rights and is a prohibited practice over which W.E.R.C. has jurisdiction. Sec. 111.70(3)(a)1, Stats. (1975).[9]

[9] In the case of *Seay v. McDonnell Douglas Corp.,* 427 F.2d 996, 1002–1004, (9th Cir. 1970), the court reasoned that the political use of agency fees was not an unfair labor practice, but rather a breach of the union's duty of fair representation, with constitu-

The plaintiffs also contend that the referral to W.E.R.C. contravenes the rule of this case as articulated in the previous appeal, *Browne v. Milwaukee Bd. of School Directors*, 69 Wis.2d 169, 230 N.W.2d 704 (1975). That appeal was from an order overruling the unions' demurrer. The unions claimed that W.E.R.C. had exclusive jurisdiction and that the plaintiffs had failed to exhaust administrative and contract remedies. This court affirmed the order overruling the demurrer and determined that W.E.R.C. did not have exclusive jurisdiction. However, that decision was based on the procedural posture of the case at that time and on issues raised by the demurrer.

"In the instant case, there is no substantial factual dispute. For demurrer purposes at least, it is agreed that money is deducted from the wages of the plaintiffs and some of that money is used for political purposes not related to the collective bargaining process. The issue posed by the case is the constitutionality of the statutes that authorizes those deductions under a 'fair-share agreement' that conformed to the statutory prescription." *Browne, supra* at 69 Wis.2d 176.

On this second appeal the case is not at the demurrer stage, constitutional issues have been resolved and factual issues now predominate.

### *Denial Of Motion To Escrow.*

The plaintiffs contend that the trial court erred by refusing to escrow all fair-share funds pending resolution of the remaining issues in this case. The plain-

tional overtones. We disagree. As has already been discussed, the constitutional issues in this case have been settled. Moreover, we interpret the Wisconsin Statutes as providing that it is an unfair labor practice to require a municipal employee to pay for anything more than their proportionate share of the cost of collective bargaining and contract administration. Secs. 111.70 (1) (h), 111.70 (2), 111.70 (3) (a) 1, Stats. (1975).

tiffs argue that the motion to escrow was in effect a motion for temporary injunctive relief. The motion was not denominated as such, but it did refer to "irreparable injury" as a basis for the remedy. The escrow remedy requested is similar to an injunction because it would have the effect of enjoining the unions from using all fair-share funds pending the outcome of the litigation. The motion to escrow will be judged by the same standards as a temporary injunction because the reasons used to support the remedy and the remedy itself are equivalent to a temporary injunction.[10]

The power to grant a temporary injunction lies within the discretion of the trial court. The trial court's decision concerning an injunction will not be reversed unless the discretion has been abused. *Culligan v. Rheaume,* 269 Wis. 242, 247, 248, 68 N.W.2d 810 (1955). An abuse of discretion in granting or refusing to grant a temporary injunction may occur if the trial court: (1) has failed to make a record of factors relevant to the discretionary determination in a particular case; (2) considered clearly irrelevant or improper factors; or (3) clearly given too much weight to one factor. *Joint School v. Wisconsin Rapids Ed. Asso.,* 70 Wis.2d 292, 309, 234 N.W.2d 289 (1975).

Pertinent factors to consider in deciding whether to grant a temporary injunction appear at sec. 813.02(1), Stats. (1975),

---

[10] At the outset the unions argue that if the escrow remedy is really a temporary injunction, the plaintiffs' request for such relief is barred by inexcusable delay. *Diehl v. Dunn,* 13 Wis.2d 280, 286, 108 N.W.2d 519 (1961). There has been considerable delay. The plaintiffs filed their complaint on May 29, 1973 and did not make the motion to escrow until August 4, 1977. However, under *Diehl, supra,* a delay will not bar relief unless the defendant has been damaged or prejudiced by that delay. There is no showing of prejudice here.

*"Temporary Injunction; When Granted.* (1) When it appears from his pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure him, or when during the litigation it shall appear that a party is doing or threatens or is about to do, or is procuring or suffering some act to be done in violation of the rights of another party and tending to render the judgment ineffectual, a temporary injunction may be granted to restrain such act."

Other relevant considerations concerning temporary injunctions were collected in *Fromm & Sichel, Inc. v. Ray's Brookfield, Inc.,* 33 Wis.2d 98, 103, 146 N.W.2d 447 (1966),

" 'Injunctions are not to be issued lightly.' Bartell Broadcasters, Inc. v. Milwaukee Broadcasting Co. (1961), 13 Wis. (2d) 165, 171, 108 N.W. (2d) 129, The 'remedy usually is made available only when necessary to preserve the status quo of the parties or to prevent a multiplicity of suits.' Rust v. State Board of Dental Examiners (1934), 216 Wis. 127, 132, 256 N.W. 919. The general rule is that, 'Injunctions do not issue for inconsequential or trivial causes.' Milwaukee Electric Railway & Light Co. v. Pallange (1931), 205 Wis. 126, 134, 236 N.W. 549. They 'should only be granted where there is an irreparable injury.' Kuntz v. Werner Flying Service, Inc. (1950), 257 Wis. 405, 410, 43 N.W. (2d) 476, quoting from Maitland v. Twin City Aviation Corp. (1949), 254 Wis. 541, 37 N.W. (2d) 74. In addition, 'Past injuries are in themselves no ground for an injunction, and it is only granted when necessary to restrain irreparable mischief, suppress oppressive and interminable litigation, or prevent a multiplicity of suits.' Cobb v. Smith, (1863), 16 Wis. 692, 697."

Sec. 813.02(1), Stats., *supra,* shows that a party may not obtain injunctive relief that he would not be permanently entitled to if he prevailed on the merits of the

claim.  In *Street, supra* n. 7, union shop employees objected to compulsory union dues being spent for political purposes.  The court considered what type of a final remedy would be appropriate and stated,

"The appellees therefore remain obliged, as a condition of continued employment, to make the payments to their respective unions called for by the agreement.  Their right of action stems not from constitutional limitations on Congress' power to authorize the union shop, but from §2, Eleventh itself.  In other words, appellees' grievance stems from the spending of their funds for purposes not authorized by the Act in the face of their objection, not from the enforcement of the union-shop agreement by the mere collection of funds.  If their money were used for purposes contemplated by §2, Eleventh, the appellees would have no grievance at all.  We think that an injunction restraining enforcement of the union-shop agreement is therefore plainly not a remedy appropriate to the violation of the Act's restriction on expenditures.  Restraining the collection of all funds from the appellees sweeps too broadly, since their objection is only to the uses to which some of their money is put.  Moreover, restraining collection of the funds as the Georgia courts have done might well interfere with the appellant unions' performance of those functions and duties which the Railway Labor Act places upon them to attain its goal of stability in the industry.  Even though the lower court decree is subject to modification upon proof by the appellants of cessation of improper expenditures, in the interim the prohibition is absolute against the collection of all funds from anyone who can show that he is opposed to the expenditure of any of his money for political purposes which he disapproves.  The complete shutoff of this source of income defeats the congressional plan to have all employees benefited share costs 'in the realm of collective bargaining,' Hanson, 351 U.S. at p. 235, and threatens the basic congressional policy of the Railway Labor Act for self-adjustments between effective carrier organizations and effective labor organizations." (footnote omitted). *Street, supra* at 367 U.S. 740, 771, 772.

In suggesting specific remedies the court stated that,

"One remedy would be an injunction against expenditure for political causes opposed by each complaining employee of a sum, from those moneys to be spent by the union for political purposes, which is so much of the moneys exacted from him as is the proportion of the union's total expenditures made for such political activities to the union's total budget. . . . A second remedy would be restitution to each individual employee of that portion of his money which the union expended, despite his notification, for the political causes to which he had advised the union he was opposed." *Street, supra* at 367 U.S. 774, 775.

In *Brotherhood of Railway Workers v. Allen,* 373 U.S. 113, 83 S. Ct. 1158, 10 L. Ed.2d 235 (1963), the issue of appropriate temporary relief was squarely before the court. In *Allen* the appeal was from a judgment providing for an injunction restraining the union from collecting dues from objecting union shop members until the union showed what portion of the exacted funds were being used for collective bargaining.[11] Relying on *Street, supra,* the court determined that this interim relief was too broad and stated,

"It also follows from *Street* that the Superior Court erred in granting respondents interim relief against compliance with the financial obligations imposed by the Agreement. As a result of this relief none of the respondents has taken any steps toward compliance since the suit was instituted. We think that lest the important functions of labor organizations under the Railway Labor Act be unduly impaired, dissenting employees (at least in the absence of special circumstances not shown here) can be entitled to no relief until final judgment in their favor is entered. Therefore, on remand respondents would be given a reasonable time within which they must pay to the bargaining representative of their class or

---

[11] In *Allen* as in *Street, supra,* political expenditures from the compulsory dues violated the National Railway Labor Act.

craft all sums required under the Agreement, including arrears, that are owing; as to any respondent failing to do this, the action must be dismissed." *Allen, supra* at 373 U.S. 120.

*Street, supra* and *Allen, supra* stand for the proposition that employees who are compelled to pay union dues are still required to pay those dues pending a determination of what portion of those dues are being used for statutorily impermissible purposes.[12]

In support of their request to escrow all funds the plaintiffs cite *Robbinsdale Educ. Ass'n v. Teacher's Local 872,* 239 N.W.2d 437 (Minn. 1976) (vacated and remanded for reconsideration in light of intervening changes in state law sub. nom. *Threlkeld v. Teacher's Local 872,* 429 U.S. 880 (1976)). In that case the Minnesota Supreme Court construed a public employee fair-

---

[12] In *Abood, supra* n. 5, the court determined that fair-share funds could not be spent for political purposes but the court declined to articulate a specific remedy because of a newly instituted union rebate procedure. The court stated,

"In view of the newly adopted Union internal remedy, it may be appropriate under Michigan law, even if not strictly required by any doctrine of exhaustion of remedies, to defer further judicial proceedings pending the voluntary utilization by the parties of that internal remedy as a possible means of settling the dispute." *Abood, supra,* at 431 U.S. 242.

The union procedure was explained as follows,

"Under the procedure adopted by the Union, as explained in the appellees' brief, a dissenting employee may protest at the beginning of each school year the expenditure of any part of his agency-shop fee for 'activities or causes of a political nature or involving controversial issues of public importance only incidentally related to wages, hours, and conditions of employment.' The employee is then entitled to a pro rata refund of his service charge in accordance with the calculation of the portion of total Union expenses for the specified purposes. The calculation is made in the first instance by the Union, but is subject to review by an impartial board." *Abood,* at 431 U.S. 240 n. 41.

share statute as allowing any fair-share dues payer to bring an action for injunctive relief in a state district court. In such an action the court would determine the validity and amount of the fair-share fee and, at the request of the complaining party, enjoin the use of the disputed fee until the union showed that amount of the fee was proper under the statute. In reaching this result the Minnesota court cited the *Street* and *Allen* decisions and acknowledged the government interest (union stability) that militates against enjoining the collection of all fair-share dues. However, the court distinguished enjoining collection of dues from enjoining use, the latter having a less substantial effect.

Regardless of the Minnesota court's rationale in allowing an injunction, *Robbinsdale* is not a persuasive precedent in this case because the use of injunctive relief was sanctioned by construction of a Minnesota statute not present here. Here, plaintiffs base their demand for injunctive remedy on constitutional claims that were not decided in *Robbinsdale*.

Returning, finally, to the initial question: Did the trial court abuse its discretion by refusing to escrow all fair-share dues? In denying the motion the trial court stated,

". . . it would be pure speculation on the part of this Court to determine without any factual basis upon which to make such a conclusion what percentage of funds have in fact been spent by unions of objecting employes outside of the confines of the statute. I could only guess that it runs anywhere from 0 to 100%."

The court's rationale is not entirely clear, but the statement at least demonstrates an exercise of discretion because if the court does not know what portion of the dues were spent for political purposes, it can not very well find the required danger of irreparable injury. *Kuntz, supra.*

The plaintiffs contend that they should not be required to show that any portion of the dues are spent for political purposes because the burden is on the unions to prove that the funds are being spent for purposes related to collective bargaining. In *Allen, supra* at 373 U.S. 122, the court stated that the burden of proof was on the unions, but the court also held that dues should continue to be paid until that determination was made.

*By the Court.*—Order affirmed and cause remanded to the Milwaukee Circuit Court to transfer the cause to W.E.R.C. for further proceedings not inconsistent with this opinion.

The following opinion was filed June 30, 1978.

*PER CURIAM (on motion for rehearing).*

On their motion for rehearing the plaintiffs contend that the proceedings in the circuit court must be stayed pending W.E.R.C.'s factual determination or they will be prejudiced by the inability of W.E.R.C. to hear class actions. Sec. 111.07 (2) (a), Stats. (1975).[1] A stay in the trial court pending administrative proceedings is proper where necessary to avoid possible prejudice to one of the parties. *United States v. Michigan National Corp.,* 419 U.S. 1, 95 S. Ct. 10, 42 L. Ed.2d 1 (1974).

In this case, as in all cases where questions of primary jurisdiction occur, both the trial court and the administrative agency have concurrent jurisdiction. *Browne v. Milwaukee Bd. of School Directors,* 69 Wis.2d 169, 175,

---

[1] The plaintiffs also contend that they will be prejudiced by the one year statute of limitations applicable to prohibited labor practices. Sec. 111.07(14), Stats. (1975). We disagree. The plaintiffs' present complaint before the circuit court properly alleges an unfair labor practice as that term has been defined by this court's opinion in this case.

230 N.W.2d 704 (1975). The trial court may therefore retain jurisdiction until W.E.R.C. makes its factual determination concerning fair share dues. The plaintiffs' claims may be maintained before W.E.R.C. in the form of the class action that has already been commenced in the circuit court.

When W.E.R.C. has determined all issues before it, both W.E.R.C. and the trial court will be precluded from any further action. The trial court may not retain jurisdiction of this case for purposes of ch. 227 review of W.E.R.C.'s decision.

The motion for rehearing is denied.